Cecil LEWITZ and Nancy Lewitz,
Plaintiffs–Appellants,

v.

**PORATH FAMILY TRUST,**
Defendant–Appellee.

No. 00CA0438.

Colorado Court of Appeals,
Div. IV.

March 29, 2001.

As Modified on Denial of Rehearing
April 26, 2001.

Certiorari Denied Dec. 3, 2001.

Robert A. Francis P.C., Robert A. Francis, Aspen, CO, for Plaintiffs–Appellants.

Carl H. Tessler, P.C., Carl H. Tessler, Denver, CO, for Defendant–Appellee.

Opinion by Judge DAVIDSON.

Plaintiffs, Cecil and Nancy Lewitz, own Parcel X; Raymond Auger, who is not a party to this lawsuit, owns Parcel Y; and defendant, the Porath Family Trust, owns Parcel Z. The parcels lie adjacent to one another in Pitkin County. The Lewitzes filed a complaint seeking a judgment determining their rights to use an easement across Parcel Z to Parcel X, or alternatively, for reformation of the deed creating the easement. The trial court entered summary judgment on behalf of the Trust, and the Lewitzes appeal. We reverse and remand for further proceedings.

In 1971, by a single warranty deed, Auger conveyed to H.E. Richey, III, what is now Parcel X, Parcel Y, and Parcel Z. The easement in controversy is described in paragraph 8 of the deed, which reads, in pertinent part:

> Grantor reserves across the following described real property, which is a portion of the property conveyed herein, an easement for a 20 foot wide road, together with an easement for utilities to be placed immediately adjacent to said easement for said road, no further than 5 feet from the edge of the road, said easement to service any *land owned by Grantor to the West of the land herein conveyed.* The location of said easement for said road shall be along a route agreeable to the Grantee, along any route not requiring grades in excess of 8% or a turn radii of less than 10% from the center of the road; the Grantor also reserves an easement on the property description below which is a portion of the real property conveyed herein for the purpose of building and maintaining a stable.... Grantor also reserves an easement on the following described property, which is a portion of the property conveyed herein, for an existing roadway.... The property affected by said easement is described as follows .... (emphasis supplied)

The subsequent description recites the metes and bounds of Parcel Z.

Contemporaneous with the execution of the deed, Richey executed a promissory note to Auger and secured the note obligation

with a deed of trust on what is now Parcel X and Parcel Y.

In 1977, Richey defaulted on the note. Auger then assigned both the note and deed of trust to William Burton, who ultimately bought both parcels at a sheriff's sale. Burton then assigned the certificate of purchase to Cecil Lewitz, who took title to both Parcel X and Parcel Y via sheriff's deed. By quitclaim deed, Lewitz later conveyed both parcels to himself and his wife as joint tenants.

In 1998, the Lewitzes conveyed Parcel Y back to Auger. In the same year, the Trust acquired Parcel Z from Richey by warranty deed. By bargain and sale deed, Auger conveyed to the Trust whatever interest Auger retained in the right-of-way easement across Parcel Z.

In the trial court, the parties filed cross-motions for summary judgment. The trial court granted the Trust's motion, determining that the Lewitzes had no enforceable interest in the right-of-way easement. Specifically, the court concluded that the easement did not pass, "by conveyance or otherwise," to the Lewitzes. Rather, it found that the easement "remained in the ownership and title" of Auger when Auger conveyed the three parcels to Richey.

Accordingly, the court determined that because Richey did not receive any easement interest from Auger, he could not have passed any such interest to subsequent owners of Parcel X or Parcel Y, here, the Lewitzes. According to the court, the "dominant estate and right to the easement [were] reserved and owned by Auger or his grantees."

On appeal, the Lewitzes assert that the trial court's ruling was incorrect. Specifically, they argue that the access right, as an easement appurtenant, ran with the land it benefited, here, Parcel X. Thus, they argue that, as owners of Parcel X via the foreclosure, they are entitled to the benefit of that easement. We conclude that entry of summary judgment was improper.

Our review of an order granting a motion for summary judgment is de novo. See *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board*, 901 P.2d 1251 (Colo.1995).

I.

Initially, we agree with the Lewitzes that the access right reserved by Auger in the 1971 deed was an easement appurtenant.

■ As pertinent here, an easement appurtenant is an "incorporeal right" attached to and belonging with some other parcel of land. It runs with that land and is incapable of existence separate and apart from the particular land to which it is annexed. *See* 7 *Thompson on Real Property* § 60.06(f)(1) (Thomas ed.1994). The property burdened by an easement appurtenant is known as the servient estate, and the property benefited by the easement is the dominant estate. *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229 (Colo.1998).

■ An easement in gross, on the other hand, is not appurtenant to any estate in land and does not belong to any person by virtue of his or her ownership of an estate in land, but instead is a mere personal interest in, or right to use, the land of another. Unlike an easement appurtenant, an easement in gross does not run with the land and creates no dominant or servient estates. *See* 1 Restatement (Third) of Property—Servitudes § 1.4(2) (2000) (hereinafter Restatement—Servitudes).

■ When interpreting an easement, we must consider the language used in the instrument, the circumstances surrounding its creation, and the purpose for which it was created. *See* 1 Restatement—Servitudes § 4.1(1); *see also Lookout Mtn. Paradise Hills Homeowners' Ass'n v. Viewpoint Associates*, 867 P.2d 70 (Colo.App.1993) (covenants must be construed as a whole and interpreted in view of their underlying purposes, giving effect to all provisions contained therein).

■ If the language of a conveyance is unclear as to the nature of the easement, the default presumption is that an easement appurtenant has been created. *See* 1 Restatement—Servitudes § 4.5(2).

■ Here, we have little trouble construing the easement as being appurtenant, and

not in gross. Auger reserved no personal right to the use of Richey's land. The deed conveying title in Parcels X, Y, and Z reserved an easement over Parcel Z for a "20 foot wide road, together with an easement for utilities ... said easement to service any land owned by Grantor to the West of the land herein conveyed." By this plain language, the express purpose of the easement was not to reserve to Auger a personal right to traverse Parcel Z, but to benefit some property "to the West" of that parcel. Likewise, the accompanying reservation of an easement for utilities, not at issue here, was to serve the utility needs of another parcel rather than Auger's personal needs. *See Lazy Dog Ranch v. Telluray Ranch Corp., supra; see also Allingham v. Nelson,* 6 Kan. App.2d 294, 627 P.2d 1179 (1981) (citing similar deed language as an example of the reservation of a right-of-way for the purpose of serving the dominant estate held by the grantee).

■ A reservation creating an easement appurtenant has the same effect as any other method of creating an easement appurtenant. *See* 7 *Thompson on Real Property, supra,* § 60.06(a)(2) (A grantor may reserve an easement appurtenant, and such an interest will be transferable with the dominant tenement just like any other easement appurtenant.). Thus, to the extent that the trial court assumed that the reserved right to the easement "remained" with Auger when he conveyed the parcels to Richey, it was in error.

## II.

The Trust argues, however, that even if Auger intended to reserve an easement appurtenant, under the circumstances existing at the time of the conveyance, the language in the deed—"any land owned by Grantor to the West of the land herein conveyed"—failed to describe a dominant estate. The Trust refers to the circumstance that in 1971, Auger did not own "land to the West" of Parcel X, Y, or Z, nor did he contemplate purchasing any such land. Assuming, then, that "the land herein conveyed" referred to Parcels X, Y, and Z, the Trust argues that there was no land described that could be

serviced by the easement. Thus, in the Trust's view the conveyance benefited a non-existent dominant estate, and any purported easement appurtenant was invalid and unenforceable.

■ This issue of interpretation of the deed was not resolved by the trial court in its summary judgment order. Moreover, we are not bound by any assertion by the parties that the facts relevant to resolution of this issue are undisputed. *See Morlan v. Durland Trust Co.,* 127 Colo. 5, 252 P.2d 98 (1952). We conclude that additional proceedings are required.

■ Initially, to the extent that the Trust implies otherwise, we note that the creator of an easement need not own the dominant estate. *See* 7 *Thompson on Real Property, supra,* § 60.02(f); *cf. Michael J. Uhes, Ph. D., P.C. v. Blake,* 892 P.2d 439 (Colo.App. 1995). Thus, although Auger was the owner of Parcels X and Y at the time of the conveyance, he need not have been.

■ In deed interpretation, the deed's language assumes great importance as the primary source of information. The court must also consider the surrounding circumstances, the situation of the parties, and the objects to be obtained. *See Lazy Dog Ranch v. Telluray Ranch Corp., supra.*

■ All of the easement reservations are contained in paragraph 8 of the deed. In that paragraph, the right-of-way easement at issue here was reserved "across the following described real property, which is a portion of the property conveyed herein." Similarly, other easements reserved in paragraph 8 refer to "the property description below which is a portion of the real property conveyed herein" and "the following described property, which is a portion of the property conveyed herein." The only property so described, by metes and bounds, is Parcel Z. Therefore, according to the language of the deed, all of the easements created in paragraph 8 burdened Parcel Z.

The language describing the dominant estate, however, is ambiguous. On the one hand, as noted, Auger did not then own any land to the west of the land conveyed by the

deed, and there is no indication that he was seeking to acquire any such land. In addition, in his affidavit submitted in the trial court, Auger indicates that he intended to benefit Parcels X and Y, that is, to provide access across Parcel Z to Parcels X and Y in the event of foreclosure of the deed of trust. On the other hand, the language of the reservation does not, under the usual rules of construction, appear to describe what is now Parcels X and Y.

We conclude that the ambiguity presented here precludes a determination on summary judgment. *See Lazy Dog Ranch v. Telluray Ranch Corp., supra.* Thus, additional proceedings are required to resolve the question of what property was intended to be the dominant estate and whether that property was sufficiently described in the deed to put subsequent good faith purchasers on notice of the nature and extent of the easement. *See Himes v. Schiro,* 711 P.2d 1281, 1283 (Colo.App.1985) ("A bona fide purchaser is one who takes property upon payment of value, in good faith, and lacking notice of any defect in the title."). Because the deed is ambiguous, we do not reach the issue of reformation.

## III.

The Trust contends that, even if it is determined that the 1971 deed sufficiently described Parcels X and Y as the dominant estate, because Richey acquired title under that deed to both the dominant and the servient estate, any easement interest was extinguished under the doctrine of merger. In making this argument, the Trust assumes, as will we, that Auger, as the fee simple owner of Parcel Z, as well as of Parcels X and Y, had the right to reserve such an easement at the time of the conveyance.

Because it may arise on remand, we will address this contention. However, we disagree with the Trust that such easement right would have been destroyed by merger.

■ Under the merger doctrine, the need for an easement is destroyed when all of the benefits and burdens come into a single ownership. *See Salazar v. Terry,* 911 P.2d 1086 (Colo.1996); *Freeman v. Rost Family Trust,*

973 P.2d 1281 (Colo.App.1999); 2 Restatement—Servitudes § 7.5.

■ However, under the mortgage exception to the merger doctrine, merger will not take place if there is an outstanding security interest in the property or estate benefited or burdened; the easement is merely suspended until the interest becomes possessory. Thus, a mortgagee of a dominant estate does not lose an easement interest that would otherwise be extinguished by merger. *See* 2 Restatement—Servitudes § 7.5, comment d; *Pergament v. Loring Properties Ltd.,* 599 N.W.2d 146 (Minn.1999); *Heritage Communities of N.C., Inc. v. Powers, Inc.,* 49 N.C.App. 656, 272 S.E.2d 399 (1980) (outstanding deed of trust sufficient to prevent termination of easement by merger of dominant and servient estates).

■ This exception is designed to protect the mortgagee of the dominant estate, should the mortgage interest become possessory, and to preserve the value of the mortgagee's interest. *See Pergament v. Loring Properties Ltd., supra; see also Duval v. Becker,* 81 Md. 537, 548, 32 A. 308, 310 (1895) (extinguishment of a mortgagee's inchoate interest through merger would "jeopardize, if not wholly destroy, the stability of every mortgage security"); *Schwoyer v. Smith,* 388 Pa. 637, 131 A.2d 385 (1957) (merger is a technical rule, so if there is any reason, such as an existing encumbrance, for keeping an outstanding interest alive, equity will not destroy it through merger).

■ Thus, although we agree with the Trust that the deed of trust held by Auger on Parcels X and Y created a security interest rather than an ownership interest, *see Herstam v. Board of Directors,* 895 P.2d 1131 (Colo.App.1995) (construing § 38–35–117, C.R.S.2000), nonetheless, as an easement appurtenant to Parcels X and Y, the easement interest benefited the property subject to that lien. *See* 7 *Thompson on Real Property, supra,* § 60.02(f)(1) (an easement appurtenant is imposed for the benefit of real property, not the owner of it).

Accordingly, even though Richey acquired both the dominant and servient estate, Auger's outstanding security interest in the for-

mer prevented any extinguishment of the easement under the doctrine of merger. Thus, if Parcels X and Y are determined to be the dominant estate, the Lewitzes, who acquired that property through the foreclosure of the security interest, acquired all the rights and interests that Auger had held, including the rights and interests in the easement. *See Pergament v. Loring Properties Ltd., supra.*

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

RULAND and KAPELKE, JJ., concur.