DR/CR FAMILY, LLLP, a Colorado limited liability partnership, Plaintiff–Appellee and Cross–Appellant,

v.

Paula BURGER, Gerald M. Quiat, and DWG & Co., a partnership, n/k/a DWG, LLC, Defendants–Appellants and Cross–Appellees.

No. 02CA0702.

Colorado Court of Appeals, Div. V.

Oct. 23, 2003.

Phillip C. Gans, P.C., Phillip C. Gans, Denver, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Laff Stein Campbell Tucker & Delaney, LLP, Ronald C. Tucker, Greenwood Village, Colorado, for Defendants–Appellants and Cross–Appellees.

Opinion by Judge ROY.

Defendants, Paula Burger, Gerald M. Quiat, and DWG & Co. (collectively, lot owners) appeal the district court's judgment awarding restitution to plaintiff, DR/CR Family, LLLP (shopping center owner), on a claim of unjust enrichment. Shopping center owner cross-appeals certain aspects of the award. We vacate the judgment and remand with directions to dismiss with prejudice.

Lot owners at one time owned all of the land under what is now Green Mountain Plaza Shopping Center. When they acquired the land, it was unplatted and subject to a ground lease between the prior owner and a lessee. Lot owners succeeded to the prior owner's rights as lessor. The lease allows lessee to construct, own, and operate a restaurant on the leased premises (Lot 4).

The lease also grants lessee the nonexclusive use of common areas, parking areas, and driveways and the exclusive use of no fewer than thirty-two parking spaces for its employees and patrons. The exclusive right is manifested by a parking lot immediately south of Lot 4 containing approximately thirty-two parking spaces which are used almost exclusively by lessee's customers and employees. The lease also requires lessee to join a merchants association and contribute to the common area maintenance of the shopping center, which includes, among other things, the parking areas. The parties agree that the exclusive use of the thirty-two parking places was a requirement of the City of Lakewood in its approval processes for the construction of the restaurant. The lease, or a memorandum of it, was recorded in the county real estate records.

In 1984, lot owners borrowed money secured by a deed of trust encumbering the land under the shopping center, excluding Lot 4, for the apparent purpose of constructing the rest of the shopping center. Lot owners later defaulted on the loan, the lender foreclosed, and shopping center owner acquired the shopping center, less Lot 4, through the foreclosure.

It is undisputed that when it acquired the shopping center, shopping center owner had actual notice of lessee's ground lease, including the rights of ingress, egress, and parking. Later, shopping center owner commenced these proceedings seeking a declaratory judgment as to: the rights, duties, and privileges of the parties pursuant to the ground lease, rent, and lessee's parking rights; a declaration that shopping center owner is entitled to terminate lessee's use of the shopping center; and a claim that lot owners have been unjustly enriched by the services provided by shopping center owner for the lessee's use of the parking.

Shortly before trial, shopping center owner settled with lessee. Lessee agreed to pay past and future contributions to the common area maintenance expenses for the duration of the lease.

Following a trial, the court awarded shopping center owner $16,162.27 for past rent on its unjust enrichment claim and twenty percent of future rent payable by lessee to lot owners for the use of the parking.

Because, in our view, it is dispositive, we address only the lot owners' contention that the trial court erred in awarding restitution on shopping center owner's unjust enrichment claim. We agree with lot owners.

To sustain an action for unjust enrichment, shopping center owner must show that it conferred a benefit, that lot owners appreciated the benefit, and that lot owners accepted the benefit under circumstances that would be inequitable for them to retain the benefit. The extent of the benefit can be measured in various ways in the discretion of the trial court. *Engel v. Engel*, 902 P.2d 442 (Colo.App.1995). Thus, the benefit can be measured by the value to lot owners or the cost to shopping center owner. *See Bock v. Am. Growth Fund Sponsors, Inc.*, 904 P.2d 1381 (Colo.App.1995).

Here, lot owners' predecessor in title, which, at the time, owned the entire shopping center property, leased what is now Lot 4 to lessee. The lease stated in pertinent part:

WITNESSETH that Lessor, for and in consideration of the covenants hereinafter contained and made on the part of the lessee, does hereby demise and lease to Lessee, the following described premises in the City of Lakewood, County of Jefferson, State of Colorado, to-wit: [Lot 4]

. . . .

[T]ogether with all Lessor's easements and appurtenances in adjoining and adjacent land, ... reasonably required for ... driveways and approaches to and from abutting highways for the use and benefit of the above described parcel of real estate, including the improvements to be erected thereon.

. . . .

*Together with non-exclusive easements for sanitary sewer purposes, for surface drainage purposes, for water, gas and electric utility purposes, each appurtenant to [Lot 4] described on Exhibit A attached*

*hereto, over, under and upon the shopping center legally described herein.*

*2. PARKING EASEMENTS AND USE OF COMMON AREAS All of those portions of the Shopping Center designated as common areas, parking areas, and driveways for ingress and egress on Exhibit "A" may be used, during entire term of this lease and any extension thereof, by the Lessee, its invitees, licensees, employees, and patrons, in common with all other tenants of the Shopping Center. Lessor agrees that said parking area shall consist of not less than 32 car parking spaces, as Shown on Exhibit "A", and that said parking area shall be as shown on Exhibit "A" and shall not be changed without Lessee's consent.*

*Lessee and Lessor may erect curbstops, as mutually agreed to, in order to define the demised premises and shopping center areas so long as there remains at least one passage which permits the free flow of traffic to and from the adjacent commercial area and provided said curbstops do not detract from the mutual and common parking rights of Lessee. Lessor agrees not to erect any buildings within 50 feet of the demised premises without the written approval of Lessee.*

32.1 It is further covenanted and agreed that the [lessee] hereinabove named shall become and remain an active member of the GREEN MOUNTAIN PLAZA Shopping Center Merchants Association, a non-profit organization to be established by the merchants doing business in the GREEN MOUNTAIN PLAZA Shopping Center, for the purpose of arranging for the following:

. . .

F.  Snow removal.
G.  Enforcing parking regulations.

. . .

I.  Enacting and enforcing rules and regulations relative to operation and maintenance of the Parking Lot and other public areas.

*Lessee hereby agrees that it will become a member of the Green Mountain Plaza Shopping Center Merchants Association upon condition that all other tenants of*

*the shopping center become members of said association, and that said association will be primarily responsible for the maintenance and repair of the common areas. Notwithstanding any provision to the contrary hereinabove, lessor and lessee hereby agree that the cost of said maintenance and repair assessed to lessee shall be a prorata portion of the entire cost for said maintenance and repair of the common areas. The lessee's portion of said costs shall be that percentage of the cost as the square footage of its building area is a percentage to the square footage of the total leasable area of the shopping center.*

(Emphasized language typed or otherwise inserted into a preprinted form lease.)

The lease later provides that real property taxes would be prorated to lessee based on 35,000 square feet. Exhibit A, attached to the lease, does not depict any common areas, parking, or ingress and egress. It is, however, undisputed that the lease grants *lessee* the exclusive *use* of 15,500 square feet of land (parking area) immediately adjacent to Lot 4 and the nonexclusive *use* of the common areas of the shopping center for parking, ingress, and egress for the duration of the lease. The lease also provides that lessee is required to contribute to the maintenance and repair of all of the common areas of the shopping center and pay a pro rata share of the real estate taxes of the entire shopping center based on the combined area of Lot 4 and the parking area.

■ Lessee's interest in the parking area is a servitude burdening the parcel acquired by shopping center owner and is for the benefit of lessee for the duration of the lease. The exact nature of that servitude, whether it is an easement or a license with an interest, is not clear from the language of the lease, but that issue need not be resolved here. Formal language in the granting document is not required to create an express servitude. An easement is presumed appurtenant. *Lobato v. Taylor*, 71 P.3d 938 (Colo. 2002); *Lewitz v. Porath Family Trust*, 36 P.3d 120 (Colo.App.2001).

Shopping center owner purchased the shopping center property with actual and constructive notice of the servitude, the existence of which would impact the value of the parcel subject to it and which, in turn, would be reflected in the purchase price.

The servitude is appurtenant to land, or an interest in land, that is, Lot 4. We reach this conclusion because (1) the lease provides that its terms, conditions, and covenants shall run with the land; and (2) there was no indication of any intent that the servitude would survive the lease or that lessee is to have any interest independent of its leasehold interest in Lot 4. *See Lewitz v. Porath Family Trust, supra.*

In modern commercial leases it is the normal practice to lease a space in a shopping center to a tenant and grant the tenant the use of the common areas of the shopping center, including the parking areas, with an obligation to contribute to maintenance and taxes. It is also common for businesses to own their own land and building within a shopping center complex with easements and licenses for the use of the surrounding land for parking, utilities, ingress, and egress without which their land and facilities would be inaccessible and unusable. In both instances it may be anticipated that the owner or tenant will lease or sublease to another party who would then benefit from the use of the common areas. *See generally* 1 Emanuel B. Halper, *Shopping Center and Store Leases* ch. 11 (1995); 3 Milton R. Friedman, *Friedman on Leases* §§ 37.1–37.2 (1997).

■ Here, the fee ownership of Lot 4 is separate from the remainder of the shopping center, and the servitude is appurtenant to the leasehold interest in, not the fee ownership of, Lot 4. While it is true that the fee owner of Lot 4 benefits from the exclusive parking area adjacent to the lot, the direct and intended benefit flows to the leasehold interest and only incidentally to the fee ownership. Shopping center owner has not directed our attention to any cases in which the owner of the servient estate is permitted to charge rent or use fees to the owner of the dominant estate or others deriving incidental benefit from the servitude. Indeed, we have found no cases in which rent has ever been requested. *See* 1 James H. Backman & David A. Thomas, *A Practical Guide to Dis-*

*putes Between Adjoining Landowners—Easements* §§ 107[3], 205[1][a], [2][a] (2003).

Shopping center owner argues that it is a colessor and is entitled to a prorated share of the rent paid to lot owners based on the number of square feet of its property burdened by the lease. This argument is unsound for a variety of reasons: (1) shopping center owner is not a party to the lease; (2) shopping center owner does not assume any of the responsibilities of a lessor; (3) the lease describes with particularity the property leased, and shopping center owner has no interest in that property; (4) a leasehold is a possessory interest in real property, and a servitude is not; (5) the nature, extent, and terms of the servitude are separately established and described in the lease; (6) Lot 4 and the exclusive parking area were in common ownership at the time of the lease, and the prior owner had the full authority to define the relationship of the parties and interests and did so; and (7) shopping center owner purchased the shopping center with constructive and actual notice of the interests.

Shopping center owner relies on *White v. Short*, 794 P.2d 1110 (Colo.App.1990), for the proposition that the right to receive rent runs with the land. That proposition is correct, but is premised on the further proposition that the prior owner had the right to receive rent. Here, the prior owners, including the original lessor, granted a servitude in favor of lessee and reserved no rent for its use. Lot owners' lender and shopping center owner received what lot owner had, the shopping center property subject to the servitude in favor of lessee.

Shopping center owner also relies on *Megginson v. Hall*, 111 Colo. 104, 137 P.2d 411 (1943); *Erwin v. West*, 105 Colo. 71, 99 P.2d 201 (1939); and *Great–West Life Assurance Co. v. Raintree Inn*, 837 P.2d 267 (Colo.App. 1992). These cases deal with the rights of parties, be they mortgagor, mortgagee, or successor, to the rent when pledged or not pledged in the mortgage or deed of trust before, during, and after foreclosure. These cases have no bearing on the issues before us.

Therefore, because we have concluded that here the owner of the servient estate cannot charge for the use of the servitude by the holder of the dominant estate, the judgment awarding shopping center owner rent for use of the parking cannot stand. Having so concluded, we need not address the remaining issues raised on appeal or in the cross-appeal.

The judgment is vacated, and the case is remanded to the trial court with directions to dismiss the complaint with prejudice.

Judge DAILEY and Judge PLANK * concur.