CITY OF BOULDER, a municipal corporation of the State of Colorado, Plaintiff–Appellee,

v.

FARMER'S RESERVOIR AND IRRIGATION COMPANY, a Colorado corporation, Defendant and Third–Party Plaintiff–Appellant,

and

Colorado Department of Transportation, State of Colorado, Defendant–Appellee.

No. 08CA1062.

Colorado Court of Appeals, Div. VII.

May 28, 2009.

Rehearing Denied July 2, 2009.

Jerry P. Gordon, City Attorney, Erin E. O'Brien, Assistant City Attorney, Boulder, Colorado, for Plaintiff–Appellee.

Law Office of Akolt and Akolt, LLC, John P. Akolt, III, John C. Akolt, II, Brighton, Colorado, for Defendant and Third–Party Plaintiff–Appellant.

John W. Suthers, Attorney General, Eric T. Meyer, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge GABRIEL.

The Farmers Reservoir and Irrigation Company (FRICO) appeals the district court's judgment entered following a bench trial authorizing the City of Boulder (Boulder) to construct an under-highway path spanning a portion of an irrigation ditch operated by FRICO, and ruling against FRICO on its counterclaims against Boulder and on its third-party complaint against the Colorado Department of Transportation (CDOT). We reverse that portion of the judgment allowing Boulder to construct the under-highway path and affirm in all other respects.

## I. Background

FRICO is a mutual ditch company that, among other things, operates and maintains an open irrigation and water transport ditch known as the Community Canal (the ditch). Boulder owns open space on both sides of a portion of Colorado Highway 93 (Highway 93). The ditch runs through a portion of this open space, and Boulder maintains a hiking trail beside the ditch. As pertinent here, this hiking trail intersects Highway 93, and at that location, users must cross over the highway at grade in order to continue on the trail. In addition, at Highway 93, the ditch passes beneath the highway through a box culvert that is owned by CDOT.

In 2004, Boulder entered into a license contract with CDOT that permitted it· to divert the hiking trail through the culvert, thereby alleviating the danger to trail users crossing Highway 93. Among· other things, the license contract required Boulder to obtain any required clearance or approval from any ditch company that might become involved in the project.

As ultimately designed, the proposed trail through the culvert would be supported eighteen inches above the bottom of the ditch by a significant number of concrete piers. It would extend eight feet in from the side of the fourteen foot-wide culvert. Although FRICO participated in discussions regarding the design of this extension, it ultimately objected to the design, contending, among other things, that the trail extension would reduce the capacity of the culvert and interfere with FRICO's ability to maintain the ditch.

Boulder then filed this declaratory judgment action pursuant to *Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229 (Colo. 2001). In its complaint, Boulder requested that the district court determine the rights, legal status, and relationships of the parties. In addition, Boulder specifically sought a determination that it could properly construct the trail extension through the culvert.

FRICO answered the complaint, opposing Boulder's request to extend its trail through the culvert, and filed counterclaims seeking (1) a determination as to the scope of FRICO's ditch easement; (2) a declaration setting the boundaries and areas occupied by easements for the embankment of Marshall Lake and for the storage of water in Marshall Lake where such areas extend beyond the record property boundaries of FRICO fee lands; and (3) declarations that FRICO has the right to maintain the quality of water in the ditch and that it may thus impose limits and conditions on the use of the ditch, including constructing fencing, imposing a water monitoring program on Boulder, and excluding third parties and animals from the ditch. FRICO also filed a third-party complaint against CDOT, asserting that by entering into the license contract, CDOT breached an alleged 1953 agreement with FRICO that prohibited CDOT from allowing future ditch modifications without FRICO's consent.

After a four-day trial, the court issued lengthy findings of fact and conclusions of law. As pertinent here, the court held that (1) Boulder could properly construct the trail extension through the culvert; (2) the 1953 situation plan that FRICO approved was not a contract; (3) FRICO was not entitled to impose the requested conditions on the use of the trail; and (4) FRICO had failed to establish the boundary lines for its claimed prescriptive rights regarding Marshall Lake.

Thereafter, FRICO filed a C.R.C.P. 59(a) motion to amend the court's findings and judgment. The court denied this motion but granted FRICO's motion to stay the judgment pending appeal.

FRICO now appeals.

## II. Boulder's Right to Alter FRICO's Ditch Easement

FRICO first contends that the district court erred in holding that Boulder could properly alter FRICO's easement pursuant to *Roaring. Fork*. We agree.

### A. *Roaring Fork Club, L.P. v. St. Jude's Co.*

In *Roaring Fork*, 36 P.3d at 1234–35, our supreme court noted that Colorado law has begun to ˙recognize that competing uses between interested property owners should be accommodated if possible, and that "inflexible notions of dominant and servient estates do little to advance that accommodation." The court thus rejected the "traditional rule" that a burdened owner may never move or alter a ditch easement, adopting instead section 4.8(3) of the Restatement (Third) of Property: Servitudes (2000), which states:

> Unless expressly denied by the terms of an easement, ... the owner of the servient estate is entitled to make reasonable changes in the location or dimensions of an easement, at the servient owner's expense, to permit normal use or development of the servient estate, but only if the changes do not

(a) significantly lessen the utility of the easement,

(b) increase the burdens on the owner of the easement in its use and enjoyment, or

(c) frustrate the purpose for which the easement was created.

*See Roaring Fork,* 36 P.3d at 1237.

The *Roaring Fork* court thus held that the owner of property burdened by a ditch easement may not move or alter that easement unless that owner (1) has the consent of the owner of the easement or (2) obtains a declaratory determination from a court that the alteration would not damage the benefited owners, in accordance with the Restatement test. *Id.* at 1231, 1237–38. The latter procedure, the court opined, would provide a forum to both the owner of the servient estate, who seeks to make alterations that will genuinely cause no damage to the easement owner and will increase his or her own property uses, and to the easement owner, who can seek to show that changes would, in fact, cause damage. *Id.* at 1238.

The court continued:

In evaluating damage, or the absence of damage, the trial court must not only look at the operation of the ditch for the benefitted[benefited] owner, but also look at the maintenance rights associated with the ditch. If the maintenance rights of the owner of the ditch easement are adversely affected by the change in the easement, then such change does not comport with the Restatement requirements.

Furthermore, the water provided to the ditch easement owner must be of the same quantity, quality, and timing as provided under the ditch owner's water rights and easement rights in the ditch.

*Id.; accord In re Tonko,* 154 P.3d 397, 404 (Colo.2007).

The parties here agree that "maintenance rights," as used in *Roaring Fork,* refers to the ditch easement owner's ability to maintain its ditch. Moreover, although not expressly stated in *Roaring Fork,* we conclude that "adversely affected," when referring to maintenance rights, necessarily means more than a de minimis or immaterial effect. *See*

*Carlin v. Cohen,* 73 Mass.App.Ct. 106, 895 N.E.2d 793, 798 (2008) (shifting burdens or costs of maintenance in connection with altering an easement might be unnecessary if increased costs are de minimis); *see also Wells v. Sanor,* 151 S.W.3d 819, 823 (Ky.Ct. App.2004) (servient estate owner may unilaterally modify or alter easement as long as the change does not result in "a material inconvenience to the rights of the dominant estate").

**B.   Boulder's Standing as a Licensee**

■ As a preliminary matter, we address FRICO's contentions that (1) the district court erred in holding that ownership of the fee interest at issue is irrelevant to the *Roaring Fork* analysis and that Boulder is the owner of the relevant fee interest, and (2) Boulder has no standing to bring a declaratory judgment claim under *Roaring Fork.* Although we agree with FRICO that the court erred in holding that Boulder is the fee owner of the land beneath the culvert (and thus is the servient estate owner), we conclude, as a matter of first impression in Colorado, that Boulder had standing as CDOT's licensee to bring the present declaratory judgment action under *Roaring Fork.* We further conclude that FRICO appears to have misunderstood the court's statement as to relevant ownership.

With respect to the district court's statement that ownership of the land under the highway is not directly relevant "to this point," read in context, we perceive the court's statement as an assertion that the fee ownership of the land beneath the culvert was irrelevant to FRICO's interest as an easement holder, not to the *Roaring Fork* analysis generally. Indeed, the court went on to find that Boulder was the owner of that land for purposes of applying *Roaring Fork.*

We agree with FRICO, however, that the court's determination that Boulder owns the land beneath the culvert was clearly erroneous. In its complaint, Boulder asserted that CDOT owns the land over which Highway 93 runs, which land includes the land beneath the culvert. In its answer, FRICO admitted this allegation, and we have located no evidence in the record to the contrary. Accord-

ingly, it appears to have been undisputed that CDOT, not Boulder, owns the land over which Highway 93 runs, and the district court clearly erred in finding otherwise.

The question thus becomes whether the analysis set forth in *Roaring Fork* applies not only where a servient estate owner (here, CDOT) seeks to alter an easement, but also where the servient estate owner licenses another (here, Boulder) to do so. We hold that it does, particularly where, as here, both the servient estate owner and its licensee are parties to the proceeding.

As noted above, *Roaring Fork* expressed concern for balancing the rights of both the servient estate owner and the owner of the easement. *Roaring Fork*, 36 P.3d at 1234–35. Accordingly, in *Roaring Fork*, our supreme court adopted a procedure by which a servient estate owner who wishes to alter an easement may seek a judicial declaration of his or her right to do so. *Id.* at 1231. We perceive no reason why the same analysis would not apply to the licensee of the servient estate holder, who, as here, brings the declaratory judgment action with the servient estate holder's express authorization.

Specifically, under *Roaring Fork*, CDOT could have filed a declaratory judgment action to allow the trail extension prior to licensing Boulder to construct such an extension. Instead, CDOT licensed Boulder to proceed, required that Boulder obtain all necessary approvals to do so, and authorized Boulder to file the action, which it did. Whether the action was filed by either CDOT or Boulder, FRICO's right to assert and present evidence on its objections is fully protected, as is the right of the servient estate owner to make full use of its property. Accordingly, such a procedure comports with the balancing of interests that is at the heart of the supreme court's holding in *Roaring Fork*, 36 P.3d at 1234–35.

Our conclusion in this regard finds further support in C.R.C.P. 57(b), which states:

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Here, Boulder unquestionably has an interest in the construction of the trail extension as a result of its license contract with CDOT. Moreover, it is undisputed that an actual controversy exists among the parties. *See Beacom v. Bd. of County Comm'rs*, 657 P.2d 440, 447 (Colo.1983) (declaratory judgment action must be based on an actual controversy).

For these reasons, we conclude that Boulder appropriately filed this declaratory judgment action as CDOT's licensee.

## C. Application of *Roaring Fork*

Turning then to the merits of the Roaring Fork analysis, we note first that we review findings of fact for clear error and conclusions of law de novo. *E–470 Public Highway Authority v. 455 Co.*, 3 P.3d 18, 22 (Colo. 2000) "We review de novo the trial court's application of the governing legal standards" to the facts of a case. *Scott v. County of Custer*, 178 P.3d 1240, 1243 (Colo.App.2007). As pertinent here, and as the parties appear to agree, the district court's determinations that the operation and maintenance of the ditch would not be adversely affected are findings of fact, and we will not disturb those findings unless they are clearly erroneous. We review de novo, however, the court's application of Roaring Fork to those facts.

■ The district court found, with record support, that the operation of the ditch would not be adversely affected were Boulder to be permitted to construct the trail extension. The question, thus, is whether the court erred in finding that FRICO's maintenance rights would be adversely affected, because "[i]f the maintenance rights of the owner of the ditch easement are adversely affected by the change in the easement, then such change does not comport with the Restatement requirements." *Roaring Fork*, 36 P.3d at 1238. The district court determined that the proposed ditch alteration would not adversely affect FRICO's maintenance rights.

We conclude that this finding was clearly erroneous.

Here, the undisputed evidence at trial established the following facts:

- As a result of the trail extension, FRICO will be unable to get its equipment through the culvert, and this impediment would cost FRICO an additional day's time to complete the required maintenance.
- FRICO uses its equipment to get into the ditch to trim and remove trees and shrubs from the ditch banks.
- FRICO needs to get into the ditch at least annually to trim such trees and brush to prevent the ditch from freezing up.
- Piers like those contemplated in Boulder's design of the trail extension create eddies in the flow of the water through the culvert that result in the deposit of silt, trash, and debris in the culvert.
- Ice forms against structures like the piers contemplated by the design of the trail extension.
- Should the area underneath the trail extension become blocked with debris or ice, the only way to clear that area would be to shut down the ditch and have FRICO personnel remove the obstructions by hand.
- Were FRICO to be required to shut down the ditch during cold, freezing conditions, it would take approximately one week to restart the ditch, and as a result, FRICO would potentially lose "hundreds of acre feet of water."
- Were FRICO to fail to shut down the ditch in a situation like that described above, it could face liability for damage to neighboring properties resulting from maintenance issues such as overtopping of the ditch.

In light of these undisputed facts, we conclude that FRICO established an adverse and material impact on its maintenance rights, and we have located no evidence in the record to the contrary.

Specifically, although an expert for Boulder testified that Boulder could undertake the required maintenance with little difficulty, this does not alter the fact that FRICO's ability to maintain its ditch would be adversely affected.

Nor does shifting the responsibility for maintenance of the structure to Boulder, as the district court ordered, persuade us that FRICO's maintenance rights will not be adversely affected. FRICO has statutory obligations to maintain the ditch. §§ 7–42–108, 37–84–101, 37–84–107, C.R.S.2008. Moreover, FRICO is subject to civil liability if it fails to do so in accordance with these obligations. *East Meadows Co. v. Greeley Irrigation Co.*, 66 P.3d 214, 216 (Colo.App.2003). Nothing in the district court's order shifting the maintenance burden to Boulder alleviates this liability risk. To the contrary, the court's order potentially increases the burden on FRICO, by requiring FRICO to oversee Boulder's maintenance of the ditch and to take affirmative action if FRICO believes that Boulder's maintenance efforts are insufficient. Moreover, the evidence at trial demonstrated that should Boulder fail to undertake maintenance in a timely fashion, FRICO could be forced to shut down the entire ditch until the problem could be rectified, resulting in, at a minimum, significant inconvenience to both FRICO and its shareholders, and jeopardizing FRICO's ability to fill its reservoir with its adjudicated water.

We likewise disagree with the district court's finding that FRICO's engineer's statement that the trail extension can be built in a manner that will allow continued operations of the ditch demonstrates that FRICO's maintenance rights would not be adversely affected. Read in context, and as the testimony at trial showed, FRICO's engineer was opining on issues relating to hydraulics in the ditch, not ditch maintenance.

For these reasons, we conclude that the district court clearly erred in finding, on the record presented, that the proposed trail extension would not adversely affect FRICO's maintenance rights. Accordingly, we reverse the portion of the court's judgment granting Boulder permission to construct the proposed extension. Nothing in this opinion, however, should be construed to prevent Boulder from proposing a different design

and from pursuing its rights and remedies under *Roaring Fork* as to such design, as appropriate.

### III. The 1953 Situation Plan

■ FRICO next contends that the district court erred in rejecting its claim that the so-called 1953 situation plan and accompanying data (situation plan) was a contract under which CDOT agreed not to modify the dimensions of the culvert. We perceive no error.

■ The existence of a contract is a question of fact, and we will not overturn the district court's findings on this issue if they are supported by competent evidence in the record. *See I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 887 (Colo.1986). The district court found, with substantial evidentiary support, that the situation plan did not constitute a contract. Specifically, the evidence established and the district court found, among other things:

● The situation plan did not contain indicia of a typical contract, including the word "contract," any signature line for the State, any term of contract, or any recitals regarding separate consideration by FRICO.

● The situation plan is not the type of document normally used as a formal contract relating to real property interests.

● The situation plan did not guarantee that the culvert would exist in an unaltered state forever. Indeed, nothing in the document expressly deals with possible future use or precludes all other uses in perpetuity.

Because these findings are amply supported by the record, we will not disturb them and thus affirm the judgment in favor of CDOT and against FRICO on FRICO's third-party complaint.

### IV. FRICO's Proposed Conditions and Restrictions on Use

■ FRICO next contends that the district court erred when it denied FRICO's request for an order granting it the power to close the trail to third parties unilaterally, to impose a water quality testing regime on Boulder, and to impose other conditions to protect the quality of its water. We are not persuaded.

■ "The mere possibility of a future claim is not an appropriate predicate for the exercise of judicial power.... Courts should refuse to consider uncertain or contingent future matters that suppose speculative injury that may never occur." *Bd. of Directors v. Nat'l Union Fire Ins. Co.*, 105 P.3d 653, 656 (Colo.2005).

Here, the evidence presented by FRICO regarding its water quality concerns was speculative at best. For example, FRICO presented no evidence of any violation of state or federal water quality standards regarding the ditch. Nor did FRICO present evidence that it had even tested the water. Although FRICO points to problems with other water facilities as the basis for its concerns regarding the ditch, a water resources engineer testified that the impacts of potential sources of contamination on any given waterway is "highly site specific."

Moreover, the evidence at trial showed that even though the trail has coexisted with the ditch for at least 20 years, with some 30,000 people using the trail each year, there has never been an incident of contaminated drinking water from the ditch.

Finally, the evidence demonstrated that uncontained septic systems exist upstream along the ditch and that many species of wild animals also have access to the ditch, each of which is a source of contamination equal to or greater than the use of the trail by the public. The evidence showed that these contamination sources have existed for many years, none has caused any water quality issues in the past, and none would have been mitigated had the court granted FRICO's requests.

In light of the foregoing evidence, the district court found that there was no support for a ruling authorizing FRICO's requested conditions. Because this finding is amply supported by the record, we affirm the district court's determination that FRICO failed to establish grounds to support the conditions and restrictions that it sought.

## V. FRICO's Alleged Prescriptive Rights Regarding Marshall Lake

Finally, FRICO contends that the district court erred when it found that FRICO had presented insufficient evidence to allow the court to make certain requested findings regarding the boundaries at Marshall Lake. We disagree.

In its counterclaim, FRICO asserted that it had established prescriptive rights through its historical use of Marshall Lake for water storage. Specifically, FRICO claimed that because certain fences, as well as the high water line, extended outside the property boundaries of the FRICO deeds, and because such uses had been continuous since approximately 1909, it was entitled to a finding by the district court that it had prescriptive rights. FRICO further sought a determination of "the meets [sic] and bounds of the record boundary lines at Marshall Lake, the proper location of fences surrounding Marshall Lake and the nature and extent of the easement for water storage that has accrued by historical use at Marshall Lake."

Although the district court agreed with FRICO that the fences did not accurately reflect the boundary lines and that the applicable deeds would control, it concluded that FRICO had failed to present adequate evidence to allow the court to make the further determinations requested. After a thorough examination of the record, we agree with the district court. The only evidence that we could locate in the record as to the boundaries at issue was the testimony of FRICO's general manager, who stated that the actual boundaries of Marshall Lake exceed the "perimeter" of the deeds granting FRICO's interest in the lake. The exhibit or exhibits to which the general manager referred, however, were not admitted at trial. Nor did FRICO provide any evidence to assist the district court in determining the metes and bounds of the asserted boundary lines. Accordingly, we perceive no error in the district court's determination that FRICO had not provided sufficient evidence to allow the court to make the findings that it requested.

## VI. Conclusion

For the foregoing reasons, that portion of the district court's judgment granting Boulder the authority to construct the trail extension is reversed. In all other respects, the judgment is affirmed.

Judge RUSSEL and Judge J. JONES concur.