The UPPER PLATTE AND BEAVER CANAL COMPANY, Plaintiff–Appellee,

v.

RIVERVIEW COMMONS GENERAL IMPROVEMENT DISTRICT, a quasi-municipal subdivision of the State of Colorado, and the City of Fort Morgan, a Colorado home rule municipal corporation, Defendants–Appellants.

No. 09CA0769.

Colorado Court of Appeals, Div. IV.

April 15, 2010.

Carlson, Hammond & Paddock, LLC, William A. Paddock, Mary Mead Hammond, Beth Ann J. Parsons, Denver, Colorado, for Plaintiff–Appellee.

Jeffrey A. Wells, City Attorney, Jerrae C. Swanson, Assistant City Attorney, Fort Morgan, Colorado, for Defendants–Appellants.

Opinion by Judge WEBB.

This dispute over interference with an easement juxtaposes the property rights of plaintiff, Upper Platte and Beaver Canal Company (Company), which holds the dominant estate, and the immunity from tort liability under the Colorado Governmental Immunity Act, §§ 24–10–101 to –120, C.R.S. 2009 (CGIA), of defendants, Riverview Commons General Improvement District and the City of Fort Morgan (collectively, City)[1],

---

1. The General Improvement District (GID) was created by the City in 2003 as a quasi-municipal subdivision. The City Council members serve as the ex officio Board of Directors of the GID. The parties do not identify any distinction between the GID and the City for purposes of the CGIA.

which own the servient estate. We agree with the trial court that the CGIA does not bar the Company's claims for declaratory, injunctive, and restorative relief concerning City property on which the easements allegedly have been altered and obstructed. Therefore, on the City's interlocutory appeal of the order denying its motion to dismiss under the CGIA, we affirm.

## I. FACTS

The trial court neither held an evidentiary hearing under *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916, 927 (Colo.1993), nor made findings resolving contested factual issues. Based on the documents submitted in connection with the motion to dismiss and the parties' appellate briefs, the following facts appear to be undisputed.

The Company holds easements to carry water through its ditch and to access the ditch for maintenance. In 2003, defendant Seagull–Fort Morgan, L.L.C. (not a party to this appeal), began a residential development on property through which the ditch runs. The final plat of the development, recorded in 2004, dedicates and conveys all streets and alleys to the City, subject to existing but unspecified easements. Seagull graded Canal Street, which parallels the ditch on its north bank. Later, Seagull paved Canal Street. Whether these actions occurred before or after the City accepted the dedication in the final plat is unclear.

The complaint alleges that these changes to Canal Street lowered and narrowed the ditch's north bank, thereby impairing the Company's ability to access the ditch with maintenance equipment and increasing the risk of overflow. In moving to dismiss, the City did not challenge these allegations, nor does it do so on appeal.

When negotiations to protect its easements rights failed, the Company brought this action against Seagull for trespass and later joined the City. As against the City, the amended complaint seeks declaratory, injunctive, and restorative relief:

66. [B]y accepting the dedication of Canal Street and/or the conveyance of Canal Street by other means as constructed by Seagull, the GID and the City have created uncertainty and insecurity with respect to the Company's rights in the Canal right-of-way and the Access and Use Easement.

. . . .

68. The Company therefore seeks a declaratory judgment ... determining that the Defendants have no interest, estate, claim, or right that permits them to alter the banks of the Canal or to prevent the proper maintenance of the Canal and forever barring and enjoining the Defendants from interfering with Plaintiff's rights to the Canal right-of-way and Access and Use Easement; permitting and providing for the restoration of the Canal banks to their pre-existing condition; and for such other relief as the Court may deem proper.

## II. LAW

We begin by examining the scope of immunity under the CGIA. In CGIA cases, we defer to the trial court's factual findings if supported by the record, but interpret the statute de novo. *Rector v. City and County of Denver,* 122 P.3d 1010, 1013 (Colo.App. 2005). We then consider principles of property law that protect easement holders.

### A. Application of the CGIA to Bar Declaratory and Equitable Claims

Subject to limited exceptions not relevant here, the CGIA bars claims that "lie[ ] ... or could lie in tort." *Colorado Department of Transportation v. Brown Group Retail, Inc.,* 182 P.3d 687, 690 (Colo.2008). "However, the exact scope of governmental immunity under the Act is difficult to define because the meanings of the terms 'tort' and 'could lie in tort' are vague." *City of Colorado Springs v. Conners,* 993 P.2d 1167, 1172 (Colo.2000). Where the claims pleaded are not typical tort claims, our supreme court has undertaken a multifaceted inquiry, using a case-by-case approach based on "a close examination of the pleadings and undisputed evidence." *Robinson v. Colorado State Lottery Division,* 179 P.3d 998, 1004 (Colo.2008).

"Although the nature of the relief requested is not dispositive ... [it] informs our understanding of the nature of the injury and the duty allegedly breached." *Id.* at 1003. "[T]he question of coverage by the Act ultimately turns on the source and nature of the government's liability, or the nature of the duty from the breach of which liability arises." *Brown Group,* 182 P.3d at 690. Immunity exists when the injury arises "out of the breach of a duty recognized in tort law, and when the relief seeks to compensate the plaintiff for that injury." *Robinson,* 179 P.3d at 1003.

In *Conners,* 993 P.2d at 1174, the court held that the CGIA does not bar statutory claims that are equitable because immunity under the Act is from "actions seeking compensatory damages for personal injuries." But the *Robinson* court cautioned that *"Conners* does not stand for the proposition that the CGIA will never bar claims for equitable relief because they are not claims for compensatory relief." 179 P.3d at 1006.

Whether the CGIA bars all claims for declaratory relief and common law injunctive relief has not been resolved. *Robinson,* 179 P.3d at 1006 n. 6 ("Thus, we do not consider today whether a non-compensatory claim for declaratory or injunctive relief would be barred by the CGIA."); *see also Brown Group,* 182 P.3d at 691 ("[W]e have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the Act.").

*Brown Group* held that the CGIA barred a claim for a declaration that a state agency "[was] responsible for a pro rata share of past, present, and future costs" to remediate groundwater contamination. 182 P.3d at 691. The court emphasized that this claim, as well as claims for contribution and unjust enrichment that also were barred, "could succeed only upon a demonstration of[ ] the Department's liability for tortious conduct." *Id.*

In *CAMAS Colorado, Inc. v. Board of County Commissioners,* 36 P.3d 135, 139 (Colo.App.2001), the division held that claims for injunctive relief arising from contract do not lie in tort for CGIA purposes. *See also*

*Forest View Acres Water District v. Colorado State Board of Land Commissioners,* 968 P.2d 168, 173 (Colo.App.1998) (request for restoration to the status quo ante if contract voided not a claim that lies in tort for CGIA purposes); *but see Arabasz v. Schwartzberg,* 943 P.2d 463, 465 (Colo.App.1996) (equitable estoppel claim based on misrepresentations of a governmental entity barred by CGIA). Any tension between *CAMAS Colorado* and *Arabasz* can be resolved on the basis that the former involved only a contract, while the latter dealt with conduct that could support a tort claim. *See Board of County Commissioners of Summit County v. DeLozier,* 917 P.2d 714, 716–17 (Colo.1996).

Therefore, we conclude that equitable and declaratory claims may be, but are not necessarily, barred by the CGIA.

## B. Equitable and Declaratory Relief Under Property Law

The City does not dispute the Company's easements, which arise from construction of the ditch in the late nineteenth century. *See In re Tonko,* 154 P.3d 397, 404 (Colo.2007) (explaining that "[d]itch easements may be established as a prescriptive easement, an easement by estoppel, an easement from prior use, or an irrevocable license"); *see also, e.g., Arthur Irrigation Co. v. Strayer,* 50 Colo. 371, 375, 115 P. 724, 725 (1911) ("And when one buys lands, through which, at the time, there exists an irrigating ditch in operation, the right of the owner of such ditch to maintain and use the same as before is in no wise affected.").

Nor does the City dispute that these easements run with the land. *See DR/CR Family, LLLP v. Burger,* 80 P.3d 948, 951 (Colo. App.2003) ("An easement is presumed appurtenant."); *Lewitz v. Porath Family Trust,* 36 P.3d 120, 122 (Colo.App.2001) ("[A]n easement appurtenant is an 'incorporeal right' .... [that] runs with [the] land....").

The Company's "right to inspect, operate, and maintain a ditch easement is a right that cannot be abrogated by alteration or change to the ditch." *In re Tonko,* 154 P.3d at 404. This right is also not in dispute. Ditch companies are statutorily required to

"maintain the embankments [of the ditch] so that the waters ... may not flood or damage the premises of others." § 37–84–101, C.R.S. 2009. Hence, the City, as "the servient owner[,] cannot unreasonably interfere with the superior right of the person possessing the easement." *Lazy Dog Ranch v. Telluray Ranch Corp.*, 923 P.2d 313, 316 (Colo.App. 1996).

■ Colorado law recognizes declaratory relief in easement disputes. *See, e.g., Roaring Fork Club, L.P. v. St. Jude's Co.*, 36 P.3d 1229, 1237–38 (Colo.2001); *City of Boulder v. Farmer's Reservoir and Irrigation Co.*, 214 P.3d 563, 566 (Colo.App.2009) (declaratory judgment action properly brought to request unilateral ditch alteration); *Turnbaugh v. Chapman*, 68 P.3d 570, 572 (Colo.App.2003) (trial court properly heard declaratory judgment action and dismissed trespass counterclaim pertaining to rights associated with an easement); *Lazy Dog Ranch*, 923 P.2d at 316 (affirming trial court's declaratory judgment regarding easement rights after plaintiff's access had been obstructed by new gates).

■ Where the servient owner has interfered with the dominant owner's easement, injunctive relief is available. *See, e.g., Roaring Fork Club*, 36 P.3d at 1237–38; *Proper v. Greager*, 827 P.2d 591, 597 (Colo.App.1992) ("[I]f a plaintiff does not receive a double recovery, a court may issue an injunction to open a blocked easement....").

■ And where an easement has been unilaterally altered, restorative relief is also available. *Roaring Fork Club*, 36 P.3d at 1235 (citing with approval *Hornsilver Circle, Ltd. v. Trope*, 904 P.2d 1353, 1357 (Colo.App. 1995) (affirming trial court order "restoring the obstructed portion of the easement to a useable surface for parking")).[2]

*Roaring Fork Club* notes that damages are inadequate in many easement cases because land is unique and courts must seek to accommodate competing uses. *Id.* at 1235–36. Similarly, 1 Dan B. Dobbs, *Law of Remedies* 784–85 (2d ed.1993), explains that in an easement alteration case, "damages alone will not provide the plaintiff with the actual use to which he is entitled," and thus:

[C]ourts usually grant the easement owner injunctive relief when it is desired and when the defendant's conduct in fact interferes with the easement rights.... Mandatory injunctions, for example an injunction to remove an obstruction on the easement, are not unusual where the facts warrant such relief.

The Restatement (Third) of Property: Servitudes § 8.3 (2000) further explains why easement cases often require noncompensatory relief:

(1) A servitude may be enforced by any appropriate remedy or combination of remedies, which may include declaratory judgment, ... injunctions, [and] restitution....

(Comment b) Servitudes have traditionally enjoyed the strong protection afforded property interests by specific remedies designed to secure enjoyment of the intended servitude rather than compensation designed to substitute for its loss.... [T]heir value is often difficult to monetize and impossible to replace without a change of location; they are appropriately protected by property rules rather than liability rules....

For obstruction of an easement, damages and injunctions requiring removal of the obstruction, restoration of the easement,

---

**2.** Other jurisdictions are in accord. *See, e.g., Green v. Mann*, 237 A.D.2d 566, 655 N.Y.S.2d 627, 629 (1997) (where servient owner's construction of a bulkhead blocking easement holder's access to unique area of lake, "compensatory damages would be inadequate, [and] the court did not err in ordering removal of the bulkhead and restoration of the area"); *Mustang Holdings, LLC v. Zaveta*, 333 Mont. 471, 475, 143 P.3d 456, 458 (2006) (holder of obstructed ditch easement may proceed in action for declaratory judgment, where trial court would "have authority ... to

order [servient owner] to restore the ditch and if indicated, permanently enjoin [servient owner] from further interference with [the] easement rights"); *Anastaplo v. Radford*, 14 Ill.2d 526, 153 N.E.2d 37, 44 (1958) ("Where a defendant has obstructed a drain, established by way of easement, a mandatory injunction compelling removal of the obstruction is proper as part of the means of restraining the defendant from interrupting the enjoyment of the easement ... and to restore the sewer to its former condition.").

and prohibiting future obstruction are normally appropriate.

Therefore, we conclude that under property law, the Company could obtain declaratory, injunctive, and restorative relief concerning its easements.

## III. APPLICATION

■ The City contends that because the Company's claims against it lie in tort under *Brown Group,* they are barred by the CGIA. We disagree. The claims for declaratory and injunctive relief do not depend on the City's liability for tortious conduct, do not seek compensation for injury caused by breach of such a duty, and do not derive from breach of a tort duty.

### A. The Company's Claims Differ from Those in *Brown Group*

The City's primary reliance on *Brown Group* to bar the claim for declaratory relief is misplaced because there, the declaratory judgment claim was "premised upon, and could succeed only upon a demonstration of, the [state agency's] liability for tortious conduct" involving groundwater contamination. 182 P.3d at 691. In contrast, here the Company seeks a declaratory judgment establishing the City's present and future obligations as owner of the servient estate. Only a declaratory judgment binding the current owner would terminate all uncertainty and controversy over the Company's easement rights. *North Sterling Irrigation District v. Simpson,* 202 P.3d 1207, 1210 (Colo.2009) ("The purpose of a declaratory judgment is to afford relief from uncertainty."); *see also Clubhouse at Fairway Pines, L.L.C. v. Fairway Pines Estates Owners,* 214 P.3d 451, 454 (Colo.App.2008) (*cert. granted* Aug. 31, 2009) ("In general, all parties having an interest in the property at issue must be joined."). We decline to interpret the CGIA as broadly preventing relief under the declaratory judgment statute. *City of Florence v. Pepper,* 145 P.3d 654, 657 (Colo.2006) ("we interpret conflicting statutes in a manner that harmonizes the statutes").

Similarly, the Company's claim for injunctive relief to prevent future interference with the easements does not depend on the City's "liability for tortious conduct." Rather, these claims also lie against the City because as the owner of the servient estate, it has access to the dominant estate. *Cf. Williamson v. Downs,* 829 P.2d 498, 500 (Colo.App. 1992) (nonparties need not be joined because they were not claiming interest in the property).

In *Brown Group,* 182 P.3d at 689, the contribution and unjust enrichment claims "allege[d] that the [state agency] was liable for a portion of the substantial [remediation] costs," and the declaratory judgment claim sought to establish that "the [state agency] was responsible for a pro rata share of past, present, and future costs." *See Conners,* 993 P.2d at 1172 ("A central legislative purpose of the CGIA is to limit the potential liability of public entities for compensatory money damages in tort."). But here, the Company's declaratory and injunctive claims do not seek to establish liability for damages against the City.

The noncompensatory nature of relief is another indicator that the CGIA does not bar the claim. *Compare Conners,* 993 P.2d at 1176 (concluding that legislative intent of Colorado Civil Rights Act was to provide noncompensatory and equitable relief), *with Skyland Metropolitan Dist. v. Mountain West Enterprise, LLC,* 184 P.3d 106, 132 (Colo.App.2007) (finding claims to be compensatory because underlying claim of slander of title "request[ed] compensation for personal harms"). Here, declaring the parties' rights and preventing future interference with the Company's easements are noncompensatory. Such relief—not money damages—would allow the Company to protect itself against liability from flooding if the ditch overflowed by ensuring unimpaired access for ditch maintenance.

■ Moreover, an easement holder's right to be free from interference with use and enjoyment does not derive from "the breach of a duty recognized in tort law." *Robinson,* 179 P.3d at 1003; *see* 1 Dobbs, *Law of Remedies* at 814 ("One who enjoys an easement such as a right of way has no possessory rights.... The pure rules of trespass, which are founded on possessory rights,

thus do not apply to easements."); *cf. Matoush v. Lovingood,* 177 P.3d 1262, 1269 (Colo.2008) (possessory interests, such as title to land, distinguished from non-possessory interests, such as title to an easement). Relief for obstructing an easement has been granted without finding an underlying tort. *See, e.g., Nampa & Meridian Irrigation Dist. v. Mussell,* 139 Idaho 28, 33, 72 P.3d 868, 873–74 (2003) ("It is unnecessary to determine whether the [defendants] are liable based upon a breach of their duty ... to provide lateral support because they are liable for unreasonably interfering with the District's easement.").

As against the City, the amended complaint requests "a declaratory judgment ... permitting and providing for the restoration of the Canal banks to their pre-existing condition." However, at oral argument, counsel for the Company explained that "[w]hat we have is a claim for restorative action against the developer who is responsible for the construction of the road in a way that impairs our operations and our easement." Counsel expressly abandoned any claim that would require the City to restore the ditch. Such relief against Seagull, even assuming the City could be ordered to allow Seagull access to perform this work, would not implicate the primary objective of the CGIA—protecting governmental entities from liability for tort damages. *Conners,* 993 P.2d at 1172–73.

Therefore, we conclude that *Brown Group* does not require us to bar the Company's claims for declaratory, injunctive, and—as limited—restorative relief under the CGIA.

## B. *Roaring Fork Club* Does Not Require Treating the Company's Claims as Arising in Tort

The City further contends *Roaring Fork Club* limits remedies based on a timeline: equitable and declaratory relief are available until the easement has been altered; only a trespass claim lies after the alteration. Hence, according to the City, because the alteration of the easement had already occurred when the Company brought suit, *Roaring Fork Club* leaves the Company with only a tort claim that is barred by the CGIA.

The City cites no language in *Roaring Fork Club* supporting such a limitation. It would be at odds with the court's admonition that "we do not support the self-help remedy that Club exercised here." *Roaring Fork Club,* 36 P.3d at 1237. And such a reading of *Roaring Fork Club* would allow the very acts that demand a remedy to preclude relief. *Donahue v. Public Utilities Commission,* 145 Colo. 499, 507, 359 P.2d 1024, 1027–28 (1961) (holding that a party can never profit from its own wrong).

Instead, *Roaring Fork Club* merely identifies two possible remedies when an easement has been altered: damages for trespass or an equitable resolution of the competing interests. *Roaring Fork Club,* 36 P.3d at 1237. It does not limit the property law principle that injunctive relief is available to the holder of an easement that has been unilaterally altered. *Proper v. Greager,* 827 P.2d at 597; 1 Dobbs, *Law of Remedies* at 784–85.

Having concluded that the City is not entitled to dismissal under the CGIA, we reject its request for attorney fees.

The order is affirmed.

Judge TERRY concurs.

Judge CONNELLY dissents.

Judge CONNELLY dissenting.

The Colorado Governmental Immunity Act (CGIA) protects the City from actions that either "lie in tort or could lie in tort." § 24–10–106(1), C.R.S.2009. In my view, this action sounds in tort; at the very least, it *could have* been brought as a tort claim.

Plaintiff relies on *Roaring Fork Club, L.P. v. St. Jude's Co.,* 36 P.3d 1229 (Colo.2001). *Roaring Fork* recognized that "interference with a ditch easement without consent constitutes trespass." *Id.* at 1237. In precluding resort to "self-help," the case requires a burdened landholder to obtain either the easement holder's consent or court approval "before commencing alterations" to a ditch. *Id.* at 1237–38. Landholders must follow this procedure "in order to avoid an adverse ruling of trespass or restoration." *Id.*

Plaintiff alleges, and at this procedural stage we must assume, that the City engaged in (or at least was complicit with a private

company in engaging in) precisely the type of "self-help" prohibited by *Roaring Fork.* The upshot is that the City has trespassed on plaintiff's ditch easement. Among the relief sought by plaintiff is an order that the City restore (or at least stand by while the company restores) the ditch easement to its pre-trespass condition.

Thus, as pled, this action appears to be for a "tort of trespass," *Hoery v. United States,* 64 P.3d 214, 217 (Colo.2003). It does not involve a "distinctly non-tortious ... duty," *Colorado Department of Transportation v. Brown Group Retail, Inc.,* 182 P.3d 687, 691 (Colo.2008).

At the very least, plaintiff could have pled a trespass claim. *Cf. Robinson v. Colorado State Lottery Div.,* 179 P.3d 998, 1005 (Colo. 2008) ("the CGIA is less concerned with what the plaintiff is arguing and more concerned with what the plaintiff could argue"). Plaintiff pled a trespass claim against the company that allegedly was complicit with the City in interfering with its ditch easement. But for the CGIA, it could (and presumably would) have pled the same claim against the City.

The procedural vehicle chosen by plaintiff to assert its claim—a declaratory judgment action—cannot avoid the CGIA bar. The supreme court has made clear that "[t]he nature of the relief requested is not dispositive of coverage by the Act, and the mere fact that a claim for relief seeks a declaration of liability resulting from tortious conduct rather than actual damages for the tortious conduct itself has no impact with regard to coverage." *Brown Group,* 182 P.3d at 692.

The City, in my view, is entitled to immunity. This does not condone the City's conduct. To the contrary, we must assume at this stage that the City has contravened *Roaring Fork* and thereby committed the tort of trespass. But the CGIA embodies a legislative judgment that, with exceptions not relevant here, governmental bodies are immune from tort actions. And the City's possible *constitutional* liability for an uncompensated taking is not before us.