**COLORADO DEPARTMENT OF TRANSPORTATION,**
Petitioner

v.

**BROWN GROUP RETAIL, INC.,**
a Pennsylvania corporation,
Respondent.

No. 06SC667.

Supreme Court of Colorado,
En Banc.

April 14, 2008.

John W. Suthers, Attorney General, Daniel D. Domenico, Solicitor General, Megan Paris Rundlet, Assistant Attorney General, Denver, Colorado, Attorneys for Petitioner.

Davis Graham & Stubbs LLP, Dean C. Miller, Robert W. Lawrence, Denver, Colorado, Attorneys for Respondent.

Justice COATS delivered the Opinion of the Court.

The Colorado Department of Transportation sought review of the court of appeals'

judgment affirming the denial of its motion to dismiss this groundwater contamination case. *See Brown Group Retail, Inc. v. State,* 155 P.3d 481 (Colo.App.2006). Although the district court found Brown Group's claims of trespass and negligent storage and disposal of hazardous waste barred by the Colorado Governmental Immunity Act, it denied the Department's motion to dismiss Brown Group's claims for contribution, unjust enrichment, and declaratory relief, finding them to be equitable in nature and not governed by the Act. The court of appeals affirmed, similarly reasoning that these latter claims did not and could not lie in tort, largely because they did not seek compensation in damages for injury to Brown Group or its property.

Because Brown Group's claims for contribution, unjust enrichment, and declaratory relief all assert claims of liability against the Department that either lie in tort or could lie in tort within the meaning of the Governmental Immunity Act, they are governed by it and must meet its prerequisites. Because Brown Group failed to comply with the notice requirement of the Act, the judgment of the court of appeals is reversed and remanded with directions to order dismissal of Brown Group's second, third, and seventh claims for relief.

## I.

Brown Group Retail, Inc., brought suit against the Colorado Department of Transportation asserting, among other things, various claims arising from the Department's alleged contamination of one of Brown Group's manufacturing sites and its failure to reimburse Brown Group for a portion of the costs incurred in cleaning up the contamination at both that site and a contiguous residential neighborhood. The Department moved to dismiss the complaint for lack of jurisdiction, on grounds that Brown Group failed to comply with the 180–day notice requirement of the Governmental Immunity Act. For purposes of this jurisdictional deter-

mination, the court heard testimony from both parties and accepted a joint stipulation of facts and numerous uncontested exhibits.

As a result of environmental assessments done in 1994, Brown Group discovered both soil and groundwater pollution at its Redfield manufacturing site and learned that chlorinated solvents had likely migrated through groundwater to an adjacent residential neighborhood. In May 1997, it advised the Colorado Department of Public Health and Environment ("CDPHE") of its investigation and proposed a remediation program. The CDPHE ultimately determined that Brown Group's proposed remediation program was insufficient and in May 1998 issued a compliance order, directing it to take specific steps to remedy the pollution on both its own and the adjacent property.

Chlorinated solvents disposed of by the Department at its Region 6 Headquarters, adjoining the Redfield site, also migrated by groundwater onto Brown Group's property and from there into the adjacent neighborhood. Although the district court found that Brown Group should have known as early as December 1994 that the contaminants traveling off its property were coming in part from the property owned by the Department, Brown Group failed to give notice to the Department until April 1998, just weeks before receiving the CDPHE's compliance order. Brown Group's April 1998 letter to the Department requested that it share in the expense of investigating and remediating the pollution.

In December 2003, Brown Group filed its complaint, stating eight separate claims for relief.[1] Brown Group alleged that the Department trespassed on its property when contaminants traveled from the Department's property onto the Redfield site, and it sought damages for that trespass. Brown Group also claimed that the Department was negligent in the storage and disposal of industrial solvents and sought damages in the form of reimbursement for that portion of its

---

1. Several of Brown Group's claims for relief were based on contamination emanating from a different Department-owned site approximately one and one half miles from the Redfield site. The Department did not challenge the district court's finding that those claims did not fall within the Act's scope and they are therefore not before this court.

remediation costs attributable to the Department's negligence.

In addition to these seemingly straightforward tort claims, Brown Group also brought claims for contribution and unjust enrichment, again alleging that the Department was liable for a portion of the substantial costs Brown Group incurred in complying with CDPHE's order. Finally, Brown Group requested a declaration that the Department was responsible for a pro rata share of past, present, and future costs expended in complying with the CDPHE compliance order.

The district court granted the Department's motion to dismiss for failure to comply with the notice requirements of the Governmental Immunity Act with regard to the claims of trespass and negligence, but it denied the motion with regard to the claims of contribution, unjust enrichment, and declaratory judgment. The district court reasoned that the latter claims, which it distinguished as seeking restitution rather than damages, were equitable in nature and therefore not subject to the Act. Both parties appealed various aspects of the district court's ruling, and the court of appeals affirmed. We granted the Department's petition for writ of certiorari to review the denial of its motion regarding its claims seeking contribution, unjust enrichment, and declaratory relief.

## II.

Although we had never attempted any meaningful theoretical justification, and by 1957 we had already found a waiver by entering into authorized contractual relations, *see Ace Flying Serv. v. Colo. Dep't of Agric.*, 136 Colo. 19, 22, 314 P.2d 278, 280 (1957), until 1971 this court openly acknowledged the doctrine of sovereign or governmental immunity and applied it to bar nonconsensual court suits against subdivisions of the state or local governments. *See Evans v. Bd. of County Comm'rs*, 174 Colo. 97, 482 P.2d 968 (1971). In that year, primarily for policy reasons, a majority of this court found it appropriate "simply to undo" what we had done and leave to the General Assembly the future existence of any such doctrine or doctrines. *Id.* at 105, 482 P.2d at 972. We made clear at that time our understanding that it would be within the authority of the legislature to restore sovereign immunity in whole or in part, and if the latter, to place limitations on the actions that might be brought against the state and its subdivisions. *Id.* at 105, 482 P.2d at 972.

The legislature immediately obliged by enacting the Colorado Governmental Immunity Act.1971 Colo. Sess. Laws 1204–18; now codified at §§ 24–10–101 to –120, C.R.S. (2007). As presently codified, the Act specifically waives sovereign immunity for injuries resulting from dangerous conditions in or along an access to, or from the operation or maintenance of, a host of public facilities, vehicles, roadways, and assets; and it also provides for a further waiver of immunity at the choice of the governing body of any public entity. *See* §§ 24–10–106, –104. As a jurisdictional prerequisite to any action claiming injury by a public entity, however, the Act requires that notice be given within 180 days of discovering the injury, and that the public entity be given 90 days to consider and respond before being sued. § 24–10–109.

Unlike those jurisdictions in which the doctrine of sovereign immunity had never been judicially abrogated, however, the Colorado legislature was faced with the task of creating and defining the reach of sovereign immunity in this jurisdiction, before specifying the circumstances in which it would be legislatively waived. As a result, its statutory scheme first broadly defined the nature of the claims to which the Act was intended to apply, *see* C.R.S.1963, § 130–11–5 (1971 Perm. Cum.Supp.), and re-imposed a bar to any such claims not falling within one of the Act's enumerated exceptions. *See* §§ 130–11–6, –8. From its inception, the Act made clear the importance of "including within one article all the circumstances under which the state or any of its political subdivisions may be liable in actions other than contract." § 130–11–2, ("Declaration of policy."). To accomplish this objective it therefore extended its coverage to all actions which lie or could lie in tort, regardless of the type of action actually pled by the claimant. § 130–11–5.

To the extent the legislature has considered subsequent court decisions as too

narrowly construing its mandate, it has responded, sometimes redundantly, by reemphasizing the breadth of its initial intent. Perhaps most notably, in 1986, following an opinion by this court concluding that the City and County of Denver could be liable for mental anguish damages in a suit alleging willful and wanton breach of contract, see *Trimble v. City & County of Denver*, 697 P.2d 716, 731 (Colo.1985), the General Assembly immediately amended the language of its policy declaration; its description of the Act's applicability; and every statutory section remotely referring to the injuries, claims, or actions to which sovereign immunity would or would not apply.[2] By adding the words, "or the form of relief" to the description of covered actions in section 24–10–105, it created the formula, "which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant," which it then repeated in no fewer than eight locations throughout the Act.

More recently, in the wake of various lower court decisions declining to treat actions by insurance companies to recover from public entities for payments to injured claimants as being covered by the Act, see, e.g., *GEICO Gen. Ins. Co. v. Pinnacol Assurance*, 56 P.3d 1218 (Colo.App.2002), the General Assembly enacted further amendments to avoid that result. With the addition of a new subsection in section 105, see § 24–10–105(2), C.R.S. (2007), the statute now specifies that any reference to "an injury, claim, or action that 'lies in tort or could lie in tort' shall be construed in all cases to include, in addition to a direct claim or action, a claim or action asserted by way of assignment or subrogation to recover from a public entity or public employee the amount paid on a damages claim." Significantly, in its attached declaration the General Assembly emphasized that it has been its intent "that tort claims for damages be subject to the limitations of the

'Colorado Governmental Immunity Act' regardless of whether a claim is brought directly by an injured party or indirectly by an assignee or subrogee of the injured party." 2006 Colo. Sess. Laws 454.

 While subsequent legislative acts cannot dispositively interpret earlier ones for the courts, subsequent legislative clarification is one accepted aid to the discovery of legislative intent. *Frank M. Hall & Co. v. Newsom*, 125 P.3d 444, 451 (Colo.2005). In any event, these recent amendments are in no way inconsistent with the existing interpretations of this court. We have long held that neither the form of the claim itself nor the relief requested is determinative of the Act's applicability. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003–04 (Colo.2008) (gathering cases). Although we have emphasized the multiplicity of considerations that may be relevant in any particular case, see *City of Colo. Springs v. Conners*, 993 P.2d 1167, 1175–76 (Colo.2000); *Berg v. State Bd. of Agric.*, 919 P.2d 254, 258–59 (Colo.1996), we have also made clear that the question of coverage by the Act ultimately turns on the source and nature of the government's liability, or the nature of the duty from the breach of which liability arises. *Robinson*, 179 P.3d at 1003–05.

While the notion of a "tort" is notoriously difficult to define with any degree of precision, see *Conners*, 993 P.2d at 1172, and the expansive statutory phrase "lies in tort or could lie in tort" adds to the difficulty of defining the Act's intended coverage, there can be little doubt that the legislature used this language in reference to the breach of a general duty of care, as distinguished from the breach of a contract or other agreement. And while we have distinguished some statutorily created duties, despite their general and non-contractual nature, on the basis of their broad policy rather than compensatory goals, see *Robinson*, 179 P.3d at 1006–07 (explaining our holding in *Conners*), we have never suggested that coverage of the Act is

---

**2.** A contemporaneous article co-authored by Chuck Berry, a member of the House Judiciary Committee that considered the revisions, stated that the amendments were intended both to disapprove *Trimble* and to clarify that "regardless of the form in which the cause of action actually was brought, the Act applies if the cause of action could have been brought in tort." Chuck Berry and Tami Tanoue, *Amendments to the Colorado Governmental Immunity Act*, 15 Colo. Lawyer 1191, 1194 (1986).

limited to claims that are capable of being recast as common-law torts by the party bringing the claim. Most especially, we have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the Act.

## III.

■ Both the district court and court of appeals appear to have been overly concerned with what they considered to be the equitable nature of Brown Group's claims of contribution, unjust enrichment, and declaratory relief, and most particularly with the fact that they did not seek compensation for damages directly caused by tortious conduct of the Department. When examined in light of their factual allegations, however, there can be no doubt that all three claims are premised upon, and could succeed only upon a demonstration of, the Department's liability for tortious conduct.

Although a right to contribution has long been recognized, in a number of non-tort contexts, as a basis for requiring restitution to the party performing a joint obligation, and at the same time preventing the unjust enrichment of the nonperforming party, Brown Group's claim expressly asserts only a statutory entitlement to "equitable apportionment of damages," as now permitted by the Uniform Contribution Among Tortfeasors Act, §§ 13–50.5–101 to –106, C.R.S. (2007). Brown Group openly understands that this claim is necessarily contingent upon the Department's joint and several liability as a tortfeasor. *See, e.g., Kussman v. City & County of Denver,* 706 P.2d 776, 780 (Colo. 1985) (stating that joint and several liability is "the predicate for contribution"). It merely relies on the distinction between an action for contribution and one directly seeking recovery by the tort victim himself to support its assertion of noncoverage by the Governmental Immunity Act.

The coverage of the Act, however, is not limited to claims that are presented, or are capable of being presented, directly by the claimant as tort claims. Rather it more broadly encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty. In light of Brown Group's express reliance solely on the Uniform Contribution Among Tortfeasors Act, we need not determine whether the state's hazardous waste management statutes, §§ 25–15–101 to –515, C.R.S. (2007), create such a distinctly non-tort duty; contemplate joint and several liability; and separately permit an action for contribution by a party subject to a CDPHE compliance order against a third party, not similarly subject to the order.[3]

■ Similarly, although the theoretical justification for ordering restitution to prevent unjust enrichment is often couched in terms of constructive or quasi contract, whether a particular claim lies in tort or could lie in tort within the meaning of the Act depends upon the factual basis underlying the claim. *See Robinson,* 179 P.3d at 1007–08. Whether a party has been unjustly (or unjustifiably) enriched, however, becomes an issue only if it has been enriched by receiving a benefit at the expense of another. Brown Group's claim of unjust enrichment is premised upon its allegation that the Department has benefited from Brown Group's reparation of damages for which the Department is jointly and severally liable in tort. For virtually the same reasons its claim for contribution falls within the coverage of the Act, so too does its claim of unjust enrichment.

Finally, Brown Group's claim for a declaration that the Department is responsible for a pro rata share of past, present, and future costs expended in complying with the CDPHE order is wholly derivative of its claims for contribution and unjust enrich-

---

**3.** In a footnote, Brown Group asserts only that liability under the hazardous waste management statutes is joint and several because the statutes are "derived in large part" from the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901 to 6992k, which has been interpreted to impose joint and several liability. This court has not considered either the duties that Colorado's statute may create or whether the history and language of Colorado's statute leads to a similar conclusion regarding joint and several liability and contribution, and we need not do so in this case.

ment. The nature of the relief requested is not dispositive of coverage by the Act, and the mere fact that a claim for relief seeks a declaration of liability resulting from tortious conduct rather than actual damages for the tortious conduct itself has no impact with regard to coverage.

### IV.

Because Brown Group's claims for contribution, unjust enrichment, and declaratory relief, all assert claims of liability against the Department that either lie in tort or could lie in tort within the meaning of the Governmental Immunity Act, they are governed by it and must meet its prerequisites. Because Brown Group's notice was held to be untimely for claims based on the same underlying conduct, and that finding is not at issue here, the judgment of the court of appeals is reversed and the case is remanded with directions to order dismissal of Brown Group's second, third, and seventh claims for relief and for further appropriate proceedings on the remaining claims.