JUSTICE COATS, concurring in the judgment in part. ¶ 54 Unlike the majority, I would reverse the judgment of the court of appeals and order that the case be returned to the district court for entry of an order granting Arvada’s motion for summary judgment. I do not believe the judgment of the court of appeals implicates our -jurisprudence concerning the statutory creation of private rights of action at all, much less requires us to separately address the question of standing. Furthermore, I would find that section 16-3-401 of the revised statutes not only fails to impose upon Arvada a duty to bear the ultimate cost of Ross’s medical treatment but, in fact, expressly absolves Arvada of any such responsibility. And finally, even if the statute actually did impose such a duty on custodians, as the court of appeals held, I would find it to be a duty implied in law, for the breach of which and corresponding damages for which the assertion of governmental immunity would be available. I therefore do not join the majority opinion, and I concur only in that portion of its judgment reversing the judgment of the court of appeals. ¶ 55 Notwithstanding Arvada’s characterization, I believe the court of appeals finds a statutory duty of custodians to shoulder the expense of caring for those in its custody but not a statutorily created right of action by providers against that custodian. While I disagree that the statute imposes liability on custodians for this expense, I do so from a simple construction of sections 16-3-401(2) and 17-26-104.5. . ¶ 56 I believe the majority’s analysis goes awry from its very inception by understanding Denver Health to be claiming, and the court of appeals judgment as upholding, an entitlement to a statutorily created, implied private right of action for the violation of a statutory obligation, Our jurisprudence upon which the majority relies, see, e.g., Allstate Ins. Co. v. Parfrey, 830 P.2d 905 (Colo. 1992); Bd. of Cty. Comm’rs v. Moreland, 764 P.2d 812 (Colo. 1988), addresses the question whether the violation of a statutorily or administratively imposed obligation was intended by the enacting body not only to have consequences in terms of governmental enforcement but also to permit a private action by the intended beneficiaries of that obligation. Denver Health, however,, makes no claim to a statutorily created private right of action, asserting instead merely a claim in the nature of restitution for satisfying or helping to satisfy Arvada’s duty to provide medical treatment for those in its custody. By the same token, the court of .appeals expressly distinguishes our private right of action jurisprudence from its holding on the grounds that it does not find any violation of what it interprets to be Arvada’s statutorily imposed duty of care, but simply that the statute implicitly imposes upon it a responsibility to bear the costs of such care, by whomever it is provided. ¶ 57 Rather than the creation of a private right of action, the majority should have been concerned with the question whether the clear duty of law enforcement authorities to care for persons in their custody, whether imposed solely by statute or already existing at law, implies an obligation to bear the cost of medical treatment provided those persons, such that anyone providing that medical treatment would have a claim, in the nature of restitution or unjust enrichment, for the recovery of its costs. Whether the custodian would be expressly, obligated to make restitution by the relationship alone or, if not, that it would simply be unjust to permit the custodian to retain the benefit it received as the result of another having provided such treatment, any entitlement to reimbursement by a provider would necessarily be dependent upon the custodian’s having received a benefit, which in turn would be dependent upon the exclusivity of the custodian’s obligation to provide medical care for its prisoners and therefore its obligation to bear the cost of that care. Section 16-3-401(2) in no way implies that custodians will be liable for the costs of medical care provided to persons in their custody; to the contrary, it specifies that the person in custody himself shall be ultimately responsible for the cost of such care, which may be assessed against him as provided by statute. § 16-3-401(2), C.R.S. (2017) (“Anyone receiving medical treatment while held in custody may be assessed a medical treatment charge as provided in section 17-26-104.5, C.R.S.”). ¶ 58 While I agree with the majority’s conclusions that section 16-3-401 does not identify any duty of custodians to healthcare providers whatsoever or relieve those providers of any separate duties they clearly have to treat patients needing emergency care, without regard for payment, maj. op. ¶¶ 33-34, I do not agree that these conclusions derive in any way from our statutorily created private right of action jurisprudence, or even that the question whether a private right of action was intended necessarily implicates the doctrine of standing. While the question whether a particular claimant may bring a particular action may be said to involve standing, in the mundane sense that any party asserting a claim must have standing to do so, the question whether a private right of action has been statutorily created does not always implicate the doctrine of standing, and in Parfrey and those cases relying on it, we have not addressed the ■creation of a private right of action in terms of the standing doctrine. - ¶ 59 For the very reason that the statute not only fails to identify a duty owed to healthcare providers but actually makes clear that the inmate being treated ultimately bears the obligation for his own medical expenses, I also disagree with the majority’s remand for consideration of Denver Health’s claim of unjust enrichment. Arvada could have benefitted from Denver Health’s medical services, a necessary element of any claim of unjust enrichment, only to the extent that Arvada was ultimately responsible for the cost of the health care. In the absence of any such responsibility, Arvada could not have been unjustly enriched. ¶ 60 Finally, even if the issue of unjust enrichment were not already disposed of for this reason, I disagree with the majority’s determination that Denver Health’s unjust enrichment claim would not be subject to our statutory provisions for governmental immunity because it is based on “contractual relations” or “contractual facts.” Maj. op. ¶¶ 39, 42. While the majority does not appear to repeat the mistake of the court of appeals in categorizing all implied contracts, including those implied in lgw along with those implied in fact, as contractual rather than tortious in nature, see Robinson v. Colo. State Lottery Div., 179, P.3d 998, 1003 (Colo. 2008); see also Colo. Dep’t of Transp. v. Brown Grp. Retail, Inc., 182 P.3d 687, 691 (Colo. 2008), it nevertheless appears to suggest that the officer’s signature on a hospital form implicates promissory estoppel or some other contract-related, rather than tort-related, claim. Maj. op. ¶¶ 41-42. As Denver Health itself conceded, the signed form was irrelevant and implied nothing about its claim for unjust enrichment. Whatever may have been the majority’s rationale for finding that the claim could not lie in tort, I would find that even if the statutory interpretation of Denver Health and the court of appeals were correct, the duty at issue in section 16-3-401 would be one of general care, deriving not from any implicit agreement or promise on the custodian’s part but strictly from its special relationship with the persons restrained in its custody. ¶ 61 Despite fundamentally disagreeing with almost all of the majority opinion, I share with it a common conclusion that section 16-3-401(2) does not impose upon custodians any duty whatsoever with regard to healthcare provider's. I therefore respectfully concur in that part of its judgment. I am authorized to state that JUSTICE EID joins in this concurrence in the judgment in part.