25CA1325 Grand Junction v City of Grand Junction 05-07-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1325
Mesa County District Court No. 21CV30108
Honorable JenniLynn Everett Lawrence, Judge

---

Grand Junction Peace Officers' Association, a/k/a Grand Junction Police Officers' FOP Lodge 68, on behalf of its members and on behalf of all others similarly situated,

Plaintiff-Appellee,

v.

The City of Grand Junction; Claudia Hazelhurst; Jodilyn Romero, n/k/a Jodilyn "Jodi" Welch; and Gregory Caton,

Defendants-Appellants.

---

ORDERS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE SULLIVAN
Fox and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 7, 2026

---

Wegener Lane & Evans, PC, Benjamin Wegener, Meaghan Fischer, Grand Junction, Colorado, for Plaintiff-Appellee

Nathan Dumm & Mayer P.C., J. Andrew Nathan, Daniel A. Jacobs, Jeffrey E. Miller, Denver, Colorado, for Defendants-Appellants

¶ 1 Defendants, the City of Grand Junction (the City) and three of its employees, Claudia Hazelhurst; Jodilyn Welch, f/k/a Jodilyn Romero; and Gregory Caton (collectively, the individual defendants), appeal the district court's orders denying their (1) requests to dismiss a claim for an accounting asserted by plaintiff, Grand Junction Peace Officers' Association, a/k/a Grand Junction Police Officers' FOP Lodge 68 (the Association); and (2) motion for attorney fees and costs. We reverse and remand the case to the district court with directions.

## I. Background and Procedural History

¶ 2 In 1998, the City created the Retiree Health Program (RHP) to pay the health insurance premiums for certain retired City employees. The City initially required that all City employees enrolled in the City's health insurance plan participate in the RHP, which was funded through biweekly deductions from participating employees' paychecks. Under the RHP, participating employees' contributions were nonrefundable.

¶ 3 Due to concerns about the RHP's financial stability, the City later made substantial changes to the program that included

changing the funding structure, enrollment and eligibility requirements, and available benefits.

¶ 4　　In April 2021, the Association filed a class action complaint against the City and the individual defendants; the individual defendants were each City employees at the times relevant to this appeal and were named in their individual and official capacities. In its amended complaint, the Association alleged that the RHP "may no longer be financially viable" due to defendants' mismanagement.  It asserted that RHP participants "may lose all of their contributions, and the earnings that should have been made had the funds been invested and managed properly."  The Association added that defendants' actions make it "virtually impossible for anyone other than [the City] to make an entirely accurate calculation of the contributions paid into the RHP and the additional premiums and benefits due and owing under the RHP."

¶ 5　　Based on these allegations, the Association brought three claims against the City (breach of contract, unjust enrichment, and a request for an accounting) and seven claims against the individual defendants (civil theft, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation of a

material fact, conversion of property, civil conspiracy to commit fraud, and interference with performance of a contract).

¶ 6 Defendants filed a motion to dismiss under C.R.C.P. 12(b)(1), asserting that the district court lacked subject matter jurisdiction under the Colorado Governmental Immunity Act (CGIA), sections 24-10-101 to -120, C.R.S. 2025, because the Association's claims lie in tort or could lie in tort. In response, the Association agreed to voluntarily withdraw its claims for civil theft, fraudulent misrepresentation, conversion of property, and civil conspiracy to commit fraud claims. But as to the remaining six claims, it requested a *Trinity* hearing to resolve factual issues. *See Trinity Broad. of Denv., Inc. v. City of Westminster*, 848 P.2d 916 (Colo. 1993).

¶ 7 The district court issued a detailed written order granting defendants' motion to dismiss in part (dismissal order). It dismissed the breach of contract claim, reasoning it could lie in tort and was therefore barred under the CGIA. It also dismissed the negligent misrepresentation and interference with the performance of a contract claims based upon the Association's untimely notice of those claims. But the court denied the motion in part and

3

scheduled a *Trinity* hearing to determine factual issues related to the breach of fiduciary duty and unjust enrichment claims. Finally, the court concluded that the Association's request for an accounting couldn't lie in tort and therefore wasn't barred under the CGIA.

¶ 8 After holding a *Trinity* hearing, the district court issued a written order dismissing the unjust enrichment claim against the City because it could lie in tort, rendering it barred under the CGIA (*Trinity* order). It also dismissed the breach of fiduciary duty claim against the individual defendants as untimely. As to the accounting claim, although the court listed a "request for [an] accounting" as one of the Association's claims, it didn't substantively analyze the claim under the CGIA.

¶ 9 In summarizing its conclusions in the *Trinity* order, the district court determined that the Association had failed to prove that the court had subject matter jurisdiction or that the City had waived sovereign immunity under the CGIA. The court therefore dismissed the complaint for lack of subject matter jurisdiction. It further concluded that defendants were entitled to recover their reasonable attorney fees and costs.

¶ 10    The Association then moved for clarification, pointing out that the *Trinity* order didn't address its accounting claim.  For their part, defendants filed a motion for attorney fees and costs, arguing that the court had dismissed the Association's amended complaint "in its entirety."  *See* § 13-17-201(1), C.R.S. 2025; C.R.C.P. 54(d).

¶ 11    Before the court ruled on either motion, the Association filed an interlocutory appeal under section 24-10-108, C.R.S. 2025.  A division of this court affirmed the dismissal of the breach of contract and unjust enrichment claims against the City and the breach of fiduciary duty claim against the individual defendants. *See Grand Junction Peace Officers' Ass'n v. City of Grand Junction*, 2024 COA 89, ¶ 30 (*Grand Junction I*).  But the division agreed with the Association that "the record [wa]s unclear whether the court intended to dismiss the Association's accounting claim, together with the Association's other claims."  *Id.* at ¶ 85.  The division, therefore, remanded the case to the district court "to rule on the motion for clarification, and to enter final orders on . . . defendants' pending motion for an award of attorney fees and costs."  *Id.* at ¶ 89.

¶ 12     On remand, the district court resolved the Association's motion for clarification by concluding that the accounting claim "may proceed in this court as an equitable claim, independent and distinct from a claim for damages" (clarification order).  And because the accounting claim remained pending, the court denied defendants' request for attorney fees but didn't mention their related request for costs.

¶ 13     The City moved for reconsideration, arguing that the court erred by permitting the accounting claim to proceed and requesting that the court amend its judgment to dismiss the Association's complaint.  The district court denied the City's motion, reasoning that "an accounting can be a stand-alone claim to secure the equitable relief of a clear and verifiable record of the financial activity of the retirement accounts" (reconsideration order).

## II.     Discussion

¶ 14     Defendants appeal the clarification order and the reconsideration order.  They contend that the district court erred by not dismissing the Association's accounting claim under the CGIA.  They also assert that the court erred by denying their request for attorney fees and not addressing their request for costs.

## A. Appellate Jurisdiction

¶ 15    We first address, and reject, the Association's contention that we lack jurisdiction to hear this appeal.

### 1. Applicable Law and Standard of Review

¶ 16    We review de novo whether we have jurisdiction over the defendants' appeal. *Smith v. City & County of Denver*, 2025 COA 70, ¶ 17. We similarly review questions of statutory interpretation de novo. *Elder v. Williams*, 2020 CO 88, ¶ 17.

¶ 17    Generally, we have jurisdiction only over appeals from final judgments. *Smith*, ¶ 14. A judgment is final when "it ends the particular action and leaves nothing further for the court to do to completely determine the rights of the parties involved in the proceeding." *Id.* at ¶ 15. But in limited circumstances, a party may take an interlocutory appeal before the district court has disposed of the case entirely. *Id.* The CGIA provides one such circumstance by permitting parties to seek interlocutory appellate review of decisions resolving questions of sovereign immunity. *See* § 24-10-108; *Smith*, ¶ 16.

¶ 18    In determining whether the CGIA authorizes interlocutory review, we must read the statutory framework as a whole, giving

7

consistent, harmonious, and sensible effect to all its parts. *Elder*, ¶ 18. In doing so, we give words and phrases their plain and ordinary meanings. *Id.* If the statute's language is clear and unambiguous, we apply the statute as written and need not resort to other tools of statutory interpretation. *Id.*

¶ 19 The timely filing of a notice of appeal is a mandatory prerequisite to appellate review. *Smith*, ¶ 14. In a civil case, a party generally must file a notice of appeal "within [forty-nine] days after entry of the judgment, decree, or order being appealed." C.A.R. 4(a)(1); *Smith*, ¶ 14. But a timely filed C.R.C.P. 59 motion "tolls the deadline for filing a notice of appeal." *Said v. Magdy*, 2024 COA 109, ¶ 8; *accord* C.A.R. 4(a)(3). Moreover, Rule 59 applies to motions seeking relief from interlocutory orders that are immediately appealable by statute or rule. *Said*, ¶ 11. A motion for reconsideration can qualify as a Rule 59 motion even if it doesn't cite the rule. *Id.* at ¶ 10.

### 2. Analysis

¶ 20 The Association contends that we lack jurisdiction over this appeal for four reasons: (1) the CGIA authorizes interlocutory review only of decisions resolving a public entity's "motion" raising

sovereign immunity, § 24-10-108, and defendants filed no motion to dismiss or similar motion after the remand in *Grand Junction I*; (2) because the accounting claim remains pending before the district court, the orders appealed in this case didn't resolve all issues and therefore aren't appealable "final orders"; (3) the division in *Grand Junction I* already resolved "all issues" regarding sovereign immunity, and section 24-10-108 doesn't authorize a second round of interlocutory review; and (4) defendants' appeal of the clarification order is untimely. We disagree and conclude that we have jurisdiction over this appeal.

¶ 21    As to the Association's first two contentions, the CGIA provides, as relevant here, "If a public entity raises the issue of sovereign immunity . . . , the court . . . shall decide such issue on motion. The court's decision on such motion shall be a final judgment and shall be subject to interlocutory appeal." § 24-10-108. Thus, the plain language of the statute doesn't limit interlocutory review to only orders ruling on a motion to dismiss; rather, it encompasses any order in which a court resolves a motion "rais[ing]" sovereign immunity. *Id.*

¶ 22     Here, defendants raised sovereign immunity in their motion to dismiss and at the *Trinity* hearing.  After the district court issued the *Trinity* order, the Association moved to clarify whether the court had dismissed the accounting claim on sovereign immunity grounds.  In the clarification order, the court ruled that the accounting claim remained pending notwithstanding the CGIA.  Similarly, the court issued the reconsideration order in response to defendants' motion asking the court to reconsider its conclusion on that issue.  Together, the clarification order and reconsideration order resolved multiple motions that raised sovereign immunity as to the accounting claim.  Therefore, under the plain language of section 24-10-108, the orders are subject to interlocutory review.[1]

¶ 23     Turning to the Association's third contention, we disagree that the Association's prior interlocutory appeal in *Grand Junction I* forecloses defendants' current appeal.  The district court didn't

---

[1] To the extent the Association argues that the CGIA doesn't provide for interlocutory review of the accounting claim because the district court already determined that the claim isn't subject to the CGIA, the plain language of the statute similarly forecloses that argument. Indeed, divisions of this court have often heard cases in which a district court denied a motion to dismiss a claim as barred under the CGIA.  *See, e.g., Dodge v. Padilla*, 2023 COA 67, ¶ 6; *Bilderback v. McNabb*, 2020 COA 133, ¶ 1.

resolve whether the accounting claim was subject to the CGIA before the division decided *Grand Junction I*, and the division specifically instructed the court to resolve that question on remand. *Grand Junction I*, ¶¶ 84, 89. We are aware of no authority, and the Association cites none, indicating that a party may not pursue interlocutory review under section 24-10-108 of an order deciding a previously unresolved CGIA question on remand.

¶ 24    As to the Association's fourth contention, we conclude that defendants timely filed their notice of appeal under C.A.R. 4(a)(1). The Association doesn't dispute that defendants filed their notice of appeal within forty-nine days of the reconsideration order. And while defendants didn't appeal within forty-nine days of the clarification order, all agree that they filed their motion for reconsideration within fourteen days of that order. Thus, if the motion for reconsideration qualified as a Rule 59 motion, it would toll the time to appeal the clarification order and render defendants' notice of appeal timely as to both orders.[2] *See* C.R.C.P. 59(a)

---

[2] The district court issued its clarification order on April 16, 2025. Defendants moved for reconsideration fourteen days later, on April 30. The court issued its reconsideration order on July 4, and defendants subsequently filed their notice of appeal on July 17.

(permitting a party to file a motion for post-trial relief "[w]ithin [fourteen] days of entry of judgment"); *Said*, ¶ 8 (a timely filed Rule 59 motion tolls the notice of appeal deadline).

¶ 25    We agree with defendants that their motion for reconsideration qualified as a Rule 59 motion. The motion sought amendment of the court's judgment that the accounting claim wasn't subject to dismissal under the CGIA, bringing it squarely within Rule 59. *See* C.R.C.P. 59(a)(4); *Said*, ¶ 14; § 24-10-108 (referring to a court's order that resolves a motion raising sovereign immunity as a "final judgment . . . subject to interlocutory appeal"). And while the motion cited C.R.C.P. 121, section 1-15(11), rather than Rule 59, the substance of both the motion and the reconsideration order focused on whether the court's judgment under the CGIA should be amended. *See Graham v. Zurich Am. Ins. Co.*, 2012 COA 188, ¶ 17 ("[W]e look to substance, not labels."); *see also Said*, ¶¶ 10-11 (construing a motion for reconsideration as a Rule 59 motion, even though the movant didn't cite the rule, because the motion sought relief from an order that was immediately appealable).

¶ 26    Accordingly, defendants' motion for reconsideration tolled the time for appealing the clarification order and rendered their later notice of appeal timely.

## B.    The CGIA

¶ 27    Defendants contend that, even if a request for an accounting can constitute a stand-alone claim, the Association's accounting claim is nonetheless barred by sovereign immunity under the CGIA. We agree.[3]

### 1.    Preservation and Waiver

¶ 28    Before considering whether the Association's accounting claim is barred under the CGIA, we briefly address the Association's contention that defendants either failed to preserve this argument or waived it.  Specifically, the Association contends defendants (1) didn't preserve their argument that the Association's accounting claim is barred under the CGIA, even if the claim is a stand-alone claim, because defendants didn't raise that argument in their

---

[3] In light of our conclusion, we don't address defendants' alternative arguments (1) that the district court erred by concluding the Association's request for an accounting was a stand-alone claim or (2) that allowing the accounting claim to proceed would cause manifest injustice.

motion for reconsideration; and (2) waived their argument that the CGIA bars the accounting claim because defendants could have, but didn't, appeal the dismissal order in which the court declined to dismiss the accounting claim.

¶ 29    We reject these contentions.  Because the question of sovereign immunity implicates a court's subject matter jurisdiction to hear a claim, a public entity may raise the CGIA's applicability at any time in the proceeding, including for the first time on appeal. *Smith*, ¶ 27; *see also Walton v. State*, 968 P.2d 636, 640 (Colo. 1998) ("[T]he CGIA requires a jurisdictional analysis," and "[c]ourts may examine an issue of subject matter jurisdiction at any stage in the proceeding.").  As a corollary principle, parties can't waive a court's subject matter jurisdiction.  *Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1206 (Colo. 2000).  Thus, any alleged waiver or lack of preservation of defendants' CGIA argument in the district court doesn't foreclose our review.

¶ 30    In any event, we don't agree with the Association that defendants failed to raise their argument that the accounting claim is barred under the CGIA, even if the claim is a stand-alone claim. True, the City didn't raise this specific argument in its motion for

reconsideration.  But it *did* raise it in response to the Association's motion for clarification, asserting that the accounting claim's equitable nature doesn't "exempt [it] from considerations under the [CGIA]."  As a result, even if preservation were required, the City sufficiently presented the "sum and substance" of the argument to the district court to preserve the issue for appeal.  *Gebert v. Sears, Roebuck & Co.*, 2023 COA 107, ¶ 25 (citation omitted).

### 2.    Applicable Law and Standard of Review

¶ 31    Under the CGIA, "sovereign immunity shall be a bar to any action against a public entity for injury which lies in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant."  § 24-10-108.  By enacting the CGIA, the General Assembly "sought to protect the government from 'excessive fiscal burdens,' which include not only the costs of judgments against the government but the costs of unnecessary litigation as well."  *Grand Junction I*, ¶ 18 (citation omitted).

¶ 32    The CGIA's coverage isn't "limited to claims that are presented, or are capable of being presented, directly by the claimant as tort claims."  *Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 691 (Colo. 2008).  Rather, the statute "more broadly

15

encompasses all claims against a public entity arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty." *Id.* In determining whether a particular claim is covered by the CGIA, we assess "the source and nature of the government's liability" or "the nature of the duty" allegedly breached. *Id.* at 690.

¶ 33 We defer to the district court's factual findings unless they are clearly erroneous. *Smith*, ¶ 35. Once factual issues are resolved, we review questions of governmental immunity de novo, including whether the CGIA bars a particular claim. *Grand Junction I*, ¶ 31.

### 3. Analysis

¶ 34 The Association has put forth multiple theories, below and on appeal, to support its entitlement to an accounting. In its amended complaint, for example, the Association contended that it would be "virtually impossible" to accurately calculate the "premiums and benefits owed" to its members or "the damages [the Association] seek[s] to recover" without an accounting. Under this theory, however, the Association's accounting claim is merely derivative of its other claims for damages that the district court has already dismissed under the CGIA. *See Brown Grp.*, 182 P.3d at 691-92

16

(holding declaratory judgment claim was barred under the CGIA because it was "wholly derivative" of the plaintiff's other claims that could lie in tort). Thus, to the extent the Association continues to press this theory on appeal, we conclude the CGIA bars the accounting claim.

¶ 35 The Association also raises two statutory-based theories to support its asserted "stand-alone" accounting claim. It first contends that the Colorado Wage Claim Act, sections 8-4-101 to -127, C.R.S. 2025, requires that the City provide it with an accounting. But the Association rightly conceded below that the Colorado Wage Claim Act doesn't apply in this case because the City doesn't constitute an employer under the Act. *See* § 8-4-101(6) (excluding cities, counties, municipal corporations, and quasi-municipal corporations from the definition of "[e]mployer"). Given the Association's concession, we fail to see how the Colorado Wage Claim Act supports its accounting claim.

¶ 36 The Association also asserts that the Colorado Open Records Act (CORA), sections 24-72-200.1 to -205.5, C.R.S. 2025, supports its accounting claim and that the City has largely ignored its CORA requests for information. Under CORA, however, the only relief a

17

court can provide the Association is an order directing the records custodian to permit inspection of the relevant records. *See* § 24-72-204(5)(b), C.R.S. 2025. The statute doesn't empower a court to order the City to hire a third party to create and provide "a complete accounting for the RHP since its inception," as the Association requested in its amended complaint. *See Mountain-Plains Inv. Corp. v. Parker Jordan Metro. Dist.*, 2013 COA 123, ¶ 35 (explaining that CORA's purpose "is not to disclose information beyond that kept by the government"). Moreover, the Association didn't seek inspection of the City's records under CORA; it merely alleged that the City had largely ignored its prior CORA requests.

¶ 37    Finally, the Association contends that defendants breached some unidentified duty by not making "all RHP records available for inspection," independent of the records' utility in calculating damages in its lawsuit. But any remaining right to those records or to an accounting would arise "from the breach of a general duty of care." *Brown Grp.*, 182 P.3d at 691; *see also Grand Junction I*, ¶ 35 (concluding the Association's breach of contract claim was "premised on allegations of misrepresentation and fraud"). Despite asserting various contractual claims against defendants, the

18

Association hasn't identified any contractual provision entitling it to an accounting.

¶ 38 In short, the Association's theories supporting its accounting claim all arise from a general duty of care rather than a contractual provision or a distinctly nontortious statutorily imposed duty. *See Brown Grp.*, 182 P.3d at 690. As a result, we conclude the CGIA bars the Association's accounting claim because it lies in tort.

¶ 39 For two reasons, we aren't convinced otherwise by the Association's argument that its accounting claim is an independent equitable claim, not simply a derivative claim to aid in calculating damages. First, the supreme court has made clear that claims for equitable relief aren't insulated from dismissal under the CGIA. *See Brown Grp.*, 182 P.3d at 691 ("[W]e have never suggested that claims for relief developed and historically administered by courts of chancery or equity, rather than courts of law, necessarily fall outside the coverage of the [CGIA].").

¶ 40 Second, as we've shown above, the Association hasn't identified any theory — beyond the duties defendants allegedly breached underlying its claims that have already been dismissed under the CGIA — that would entitle it to equitable relief in the

form of an accounting. To the contrary, the Association's allegations confirm that the primary, if not sole, purpose of its requested accounting is to accurately calculate the compensation owed to its members pursuant to claims that have already been dismissed under the CGIA. *Cf. Upper Platte & Beaver Canal Co. v. Riverview Commons Gen. Improvement Dist.*, 250 P.3d 711, 716 (Colo. App. 2010) (explaining that equitable relief that is "noncompensatory" in nature may not be barred under the CGIA). Put differently, the Association's claim for an accounting, even if equitable in nature, is "premised upon, and could succeed only upon a demonstration of," defendants' liability for claims that are barred under the CGIA. *Brown Grp.*, 182 P.3d at 691.

¶ 41 Accordingly, we conclude that the Association's accounting claim is barred under the CGIA. We therefore reverse the district court's clarification order and reconsideration order and remand the case for the district court to dismiss the accounting claim.

### C. Attorney Fees and Costs

¶ 42 Defendants also seek reversal of the district court's order denying their request for attorney fees and costs. As to attorney fees, they argue that (1) the district court has already dismissed all

claims against the individual defendants, entitling them to their attorney fees under section 13-17-201, and (2) the City is entitled to its attorney fees if we reverse the district court's orders declining to dismiss the Association's accounting claim — the sole remaining claim in this case. Because we conclude that all defendants are entitled to their reasonable attorney fees, we need not address these contentions separately.[4]

¶ 43     Though we generally review a district court's decision to award attorney fees for an abuse of discretion, we review de novo whether attorney fees are recoverable at all. *Del Valle v. Cal. Cas. Indem. Exch.*, 2022 COA 138, ¶ 24. Whether a statute mandates an award of attorney fees is a question of statutory interpretation that we also review de novo. *Crandall v. City & County of Denver*, 238 P.3d 659, 661 (Colo. 2010). In interpreting an attorney fees statute, we apply the same principles of statutory construction as recited above, *supra* Part II.A.1.

---

[4] Given our conclusion, we also need not address the Association's contention that defendants didn't preserve their argument that the individual defendants are entitled to their reasonable attorney fees regardless of the outcome of this appeal.

¶ 44    Section 13-17-201 provides for a mandatory award of attorney fees to the defendant when a court dismisses a tort action under Rule 12(b) before trial.  *Gagne v. Gagne*, 2014 COA 127, ¶¶ 73-74. The statute states, in pertinent part:

> In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other persons, where any such action is dismissed on motion of the defendant prior to trial under [R]ule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

§ 13-17-201(1).

¶ 45    When a plaintiff pleads a mix of both tort and nontort claims, a prevailing defendant is entitled to recover attorney fees under the statute if "the essence of the action was one in tort."  *Luskin Daughters 1996 Tr. for Benefit of Ackerman v. Young*, 2019 CO 74, ¶ 22 (citation omitted).  We determine, as a matter of law, whether the essence of the action was one in tort.  *Del Valle*, ¶ 25.

¶ 46    After the district court dismisses the accounting claim on remand, all ten of the Association's claims will have been dismissed — four voluntarily by the Association and six by order of the court in response to defendants' requests under Rule 12(b).  *See*

22

*Crow v. Penrose-St. Francis Healthcare Sys.*, 262 P.3d 991, 998 (Colo. App. 2011) (a plaintiff seeking to avoid attorney fees liability under section 13-17-201 must voluntarily dismiss *all* claims). Of those ten, the Association expressly pleaded seven claims as torts — civil theft, breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation of a material fact, conversion of property, civil conspiracy to commit fraud, and interference with the performance of a contract. In addition, the division in *Grand Junction I* determined that two of the Association's other claims (breach of contract and unjust enrichment) were based on allegations of fraud and misrepresentation. *See Grand Junction I*, ¶¶ 35-36, 47. We have similarly concluded that the Association's final claim, the accounting claim, was premised on claims that lie in tort or could lie in tort. We therefore have little difficulty concluding that the essence of the Association's action sounded in tort. *See Luskin Daughters*, ¶¶ 21-23.

¶ 47    We aren't persuaded otherwise by the Association's reliance on *Robinson v. Colorado State Lottery Division*, 179 P.3d 998, 1010 (Colo. 2008). In *Robinson,* the supreme court held that section 13-17-201 didn't authorize an award of attorney fees to the government

23

when the plaintiff pleaded only contract claims, even though the contract claims were barred by the CGIA. *Id.* The supreme court explained that the statute wasn't "intended to hinder the filing of contract claims where the plaintiff could have alternatively pleaded claims in tort." *Id.* But here, unlike *Robinson*, the Association *did* plead most of its claims as torts. Moreover, *Robinson* predates the "essence of the action" analysis required by *Luskin Daughters* for actions that present a mix of tort and nontort claims. 2019 CO 74, ¶ 22 (citation omitted).

¶ 48 Accordingly, we reverse the district court's order denying defendants' motion for attorney fees and remand the case to the district court to determine the amount of such fees.

¶ 49 Finally, we note that the district court didn't rule on defendants' request for litigation costs under C.R.C.P. 54(b) following the remand in *Grand Junction I* but rather addressed only defendants' request for attorney fees. On remand, the court should resolve defendants' outstanding request for costs.

### III. Disposition

¶ 50 We reverse the district court's orders declining to dismiss the accounting claim and its order denying defendants' motion for

attorney fees and costs.  We remand the case to the district court with directions to (1) dismiss the accounting claim; (2) determine and award defendants their reasonable attorney fees; and (3) resolve defendants' request for costs.

JUDGE FOX and JUDGE KUHN concur.